54 P.3d 397

Andre S. TATIBOUET, Petitioner–
Appellant,

v.

J.W. ELLSWORTH, Respondent–Appellee.

In the Matter of the Arbitration Between
J.W. Ellsworth, Claimant–Appellee,

v.

Andre S. Tatibouet, Individually and as
President of Hotel Corporation of the
Pacific, Inc., Respondent–Appellant.

Nos. 22551, 22552.

Supreme Court of Hawai'i.

Sept. 12, 2002.

Michael K. Livingston and Mark S. Davis, Honolulu, of Davis Levin Livingston Grande and Peter W. Craigie and D. Austin Lewis of Craigie, McCarthy & Clow, for appellant.

Steven M. Egesdal, Honolulu, and Daniel A. Bent of Carlsmith Ball, for appellee.

MOON, C.J., LEVINSON and NAKAYAMA, JJ., and ACOBA, J., Concurring Separately, with whom RAMIL, J. Joins.

Opinion of the Court by NAKAYAMA, J.

Respondent-appellant Andre Tatibouet appeals from the first circuit court's order, the Honorable Gail Nakatani presiding, granting petitioner-appellee J.W. Ellsworth's motion to confirm his final arbitration award and denying Tatibouet's motion to vacate the arbitration award. On appeal, Tatibouet argues that the circuit court erred when it confirmed the award because the arbitration panel exceeded its authority when it: (1) failed to follow Hawai'i law by (a) incorrectly dismissing the ready, willing, and able requirement for breach of contract claims, (b) incorrectly awarding damages to Ellsworth under an unjust enrichment theory, which he expressly waived in the underlying contract, and (c) incorrectly ruled that Ellsworth had an exclusive right to purchase the Mark Twain Hotel; (2) failed to enforce the fully integrated Settlement Agreement; (3) awarded legally inconsistent remedies; and

(4) refused to hear evidence on how the award would unjustly enrich Ellsworth. Tatibouet asks this court to review the merits of the arbitration award.

We hold that judicial review of arbitration awards pursuant to Hawai'i Revised Statutes (HRS) § 658-9(4) does not encompass the effects of choice-of-law restrictions in the underlying contract on arbitral authority unless so delineated in the arbitration clause. To uphold public policy and secure the finality of arbitration awards, reviewing courts must not review *de novo* an arbitration award unless one of the four grounds prescribed by HRS § 658-9 or one of the two judicially recognized exceptions has been alleged and violated. This holding does not extend to cases that prove the arbitrators wilfully and deliberately failed to apply a selected law. Accordingly, we affirm the circuit court's order confirming the arbitration award.

## I. BACKGROUND

In July 1979, Ellsworth began his employment with Hotel Corporation of the Pacific, Inc., a Hawai'i corporation doing business as "Aston Hotels and Resorts" (Aston). Tatibouet was the Chief Executive Officer (CEO) and majority shareholder of Aston. Ellsworth assisted Tatibouet in purchasing two hotels in the San Francisco area, the Mark Twain and the Pickwick Hotels.

In May 1993, Aston terminated Ellsworth from his position. Thereafter, Ellsworth brought claims against Aston and Tatibouet for deferred compensation and other post-termination benefits. In December 1993, Tatibouet and Ellsworth entered into a Settlement Agreement, in which each party released all claims arising out of Ellsworth's employment with Aston, and included resolution of Ellsworth's claims of interest in the Pickwick and Mark Twain Hotels. As consideration for promises outlined in the Settlement Agreement, Ellsworth would have received a defined percentage of the sale proceeds for both hotels, if they were sold before October 1, 1995. If the hotels were not sold by October 1, 1995, Ellsworth would have the option of purchasing the hotels at their appraised value as of October 1,

1995. As to the Pickwick Hotel, the Settlement Agreement expressly provided:

4.4 *If Hotel is Not Sold by October 1, 1995.* If the hotel is not sold by October 1, 1995, Tatibouet shall provide to Ellsworth . . . an appraisal of the current fair market value of the hotel prepared by Hastings, Conboy, Braig & Associates, Ltd. . . . . Tatibouet shall, however, order such appraisal no later than October 1, 1995, and all parties shall use their best efforts to obtain the appraisal as promptly as possible. . . . Within thirty (30) days of Tatibouet's delivery of the appraisal to Ellsworth, or October 1, 1995, whichever is later, Tatibouet shall provide Ellsworth with Tatibouet's calculation of the positive or negative amount payable or allocable to Ellsworth under Subsection 4.4.3 as of October 1, 1995, and the supporting data used by Tatibouet for his calculation (the "Pickwick October 1995 Calculation").

4.4.1 Within sixty (60) days of his receipt of the Pickwick October 1995 Calculation described in Subsection 4.4, above, or October 1, 1995, whichever is later, Ellsworth shall have the right to exercise, by giving written notice to Tatibouet, an option to: (a) defer making a decision, subject, however, to the provisions of Subsection 4.5 below, (b) purchase the hotel pursuant to the provisions of Subsection 4.4.2, or (c) receive a payment or allocation of the amount, if any, determined under Subsection 4.4.3 . . . .

4.4.2 Ellsworth shall have the right to purchase the hotel, so long as it has not been sold or is not subject to a sales agreement, for cash at its appraised value as would otherwise be payable to him under Subsection 4.4.3 below[.]

With regard to the Mark Twain Hotel, the Settlement Agreement provided a similar option to purchase clause, which provided:

5.4.2 Ellsworth shall have the right to purchase the hotel, so long as it has not been sold or is not subject to a sales agreement, for cash at its appraised value as determined under Subsection 5.4, above, less the amount that would otherwise be payable to him under Subsection 5.4.3, below; subject, however, to any applicable

offset provisions contained in Section 6 below. The closing shall take place no later than one hundred thirty five [sic] (135) days subsequent to Ellsworth's giving notice of the exercise of his option to purchase the hotel hereunder.

Under a section entitled, "Miscellaneous," the Settlement Agreement also contained a choice-of-law provision [hereinafter "choice-of-law provision"]: "10.3 *Governing Law.* This Agreement shall be subject to, governed by and construed and enforced pursuant to the laws of the State of Hawai'i." The Settlement Agreement also included a Mandatory Arbitration clause [hereinafter "arbitration clause"], which provided that arbitration was required if a dispute arose between the parties regarding the terms of the Settlement Agreement:

9.6 *Mandatory Arbitration.* If, at any time during the term hereof or after termination hereof, any dispute, difference or question shall arise among or between the parties hereto with respect to the provisions, construction, meaning or effect of this Agreement or anything herein contained or the rights or obligations of the parties hereunder, and if the parties are unable in good faith to resolve such dispute, difference or questions, then every such dispute, difference or questions shall, at the desire of any party, be submitted and determined by ... a panel of three arbitrators.... [T]he arbitrators so appointed shall thereupon proceed to determine the matter in dispute, difference or question, and the decision of any two of them shall be final, conclusive and binding upon all parties, all as provided in Chapter 658, Hawai'i Revised Statutes [ (HRS) ] as the same may be amended, and judgment may be entered upon any such decision by such Circuit Court as provided in such statute.... Any arbitration proceeding conducted pursuant to this paragraph ... shall be governed by the Commercial Rules of the American Arbitration Association.

By October 1, 1995, the hotels had not been sold. Although the Settlement Agreement required Tatibouet to provide and deliver appraisals of the hotels no later than October 1, 1995, thereby allowing Ellsworth to exercise his purchase options, Tatibouet failed to fulfill his obligations. Instead, Tatibouet sold the Pickwick Hotel to a third party on November 26, 1996 for $14.48 million.

On March 6, 1997, Ellsworth made a demand for arbitration as allowed by the arbitration clause of the Settlement Agreement. Edward King, Douglas Young, and James Ventura were selected as members of the arbitration panel [hereinafter "the arbitration panel"] in accordance with the terms of the Settlement Agreement. Ellsworth asked the panel to determine whether he: (1) had an option to purchase the Pickwick or Mark Twain Hotels, which was frustrated by Tatibouet; (2) was entitled to pursue the option; and (3) was entitled to damages for being prevented from exercising the option, and, if so, in what amount.

Between October 19, 1997 and December 29, 1998, seven interim orders, which included dissents, and a final order were issued. The panel noted, in its first interim order, that Ellsworth failed to prove he was ready, willing, and able to purchase the Pickwick Hotel under the terms of the Settlement Agreement. However, the panel ruled that Ellsworth had presented sufficient evidence to establish a disputed factual issue, and, therefore, the issue whether Ellsworth was ready, willing, and able to purchase the Pickwick remained open. The panel also decided that Tatibouet breached the Settlement Agreement when he did not provide an appraisal of the Pickwick Hotel to Ellsworth on October 1, 1995. Tatibouet attributed the delay to Robert Hastings, who submitted the appraisals to Ellsworth after the deadline passed. The panel did not find the delay excusable. According to the terms of the Settlement Agreement, Tatibouet was required to "use [his] best efforts to obtain the appraisal as promptly as possible." It ruled that "Tatibouet had a nondelegable duty to provide the appraisal to Ellsworth," and, "[w]hile failure by Hastings to carry out instructions of Tatibouet may give Tatibouet rights against Hastings, that failure did not provide a defense for Tatibouet against Ellsworth."

Tatibouet's breach, the panel noted, made it difficult for Ellsworth to prove that he was ready, willing, and able to acquire the hotel because he

could not have known the amount required to be paid, or the desirability of the right to purchase until the October 1, 1995 appraisal was provided. The complexity of Ellsworth's situation is compounded by the fact ... that Mr. Ellsworth could not exercise the option alone, but would need to gather other investors and financing to do so.... These factors make it difficult for Ellsworth now to demonstrate that, if he had been given the appraisal on a timely basis, he would have been ready, willing, and able to purchase the Pickwick Hotel under the terms of the Settlement Agreement.

However, the arbitrators noted that Ellsworth provided some evidence that he took actions that were indicative of "at least an inchoate intention to exercise the option":

He had contacted at least one investor, Mark Polivka, who had expressed willingness to consider investing up to $900,000 toward acquisition of the hotel. Ellsworth had also traveled to San Francisco during July 1996 to inspect the hotel and to talk to management personnel there. No panel member is prepared, on the basis of these proofs, to determine that Ellsworth could and would have acquired the Pickwick had he been given the October 1, 1995 appraisal in timely fashion.

Inasmuch as the panel could not determine whether Ellsworth was ready, willing, and able to purchase the Pickwick Hotel due to Tatibouet's failure to deliver the appraisals, the Panel refused to determine whether Ellsworth was able to exercise the purchase option under the Settlement Agreement. While Young agreed that Ellsworth failed to prove he was ready, willing, and able to purchase the Pickwick, he dissented because he though it would be unfair to hear evidence on the issue.

The panel ruled in the second interim order that the proper remedy for Tatibouet's failure to provide a timely appraisal to Ells-

worth was an award based on unjust enrichment for the Pickwick Hotel. Because the panel determined an equitable remedy was appropriate, it decided that an analysis into whether Ellsworth was ready, willing, and able to purchase the Pickwick Hotel was unnecessary. The panel resolved that the proper remedy for Tatibouet's breach regarding the Pickwick Hotel was monetary damages based on principles of unjust enrichment because Tatibouet wrongfully benefitted from the sale of the Pickwick Hotel to a third party after October 1, 1995. In this regard, the panel indicated that it would award Ellsworth the difference between the sale price of $14.48 million and the appraised value of $11.4 million minus costs; the panel also added interest to this amount at a rate of 10% per annum from December 1, 1996 to July 1, 1998. Later, the panel decided that interest would not be awarded for the period prior to July 17, 1998, the date of Interim Order No. 4.

As to the Mark Twain Hotel, the panel determined that, according to the terms of the Settlement Agreement, Ellsworth had an exclusive right to purchase the hotel at the appraisal price in 1995, and his right remained effective until the expiration of the 135–day period after notice was given of his intent to buy the hotel.

Following the panel's finding, Tatibouet requested the opportunity to present evidence on theories of unjust enrichment with regard to the Mark Twain. He argued that Ellsworth would receive a $2.85 million windfall, which was the difference between Ellsworth's purchase price of $7.95 million in 1995 and the $10.8 million appraisal value of the hotel at the time the sale closed on July 1, 1998, if he were allowed to purchase the hotel at its 1995 price.[1] The appreciation was attributed to the increase in San Francisco hotel real estate values. The panel denied Tatibouet's request, noting that Ellsworth would have purchased the hotel for $7.95 million at the required time, and would have reaped the benefits of the real estate boom. Such a payment was not contemplated by the Settlement Agreement. The panel

1. The purchase price and appraisal value of the hotel were provided by Tatibouet to the arbitra-

tion panel and was incorporated under the analysis section of Interim Order No. 7.

ruled that the requested reimbursement could not be categorized as a form of unjust enrichment, and it distinguished the Mark Twain Hotel scenario from the situation involving the Pickwick Hotel.

On March 5, 1999, the panel reached a final decision. As to the Pickwick, the panel awarded to Ellsworth $3.08 million, which was the difference between the November 26, 1996 sale price of $14.48 million and the $11.4 million appraised value of the Pickwick Hotel minus $1,413,604.17 costs of sale, to Ellsworth. Interest was added to the final award at a rate of 10% per annum for the period from August 11, 1998 to March 1, 1999, in the amount of $96,908.70. As to the Mark Twain, the parties agreed to proceed with the sale per the Settlement Agreement. The panel denied Tatibouet's request for adjustments to reflect the appreciation value of the hotel and the operating expenses incurred prior to July 1, 1998.

On March 11, 1999, Ellsworth filed a motion to confirm the final award and seal the Settlement Agreement in the Circuit Court of the First Circuit. On March 15, 1999, Tatibouet cross-moved to vacate the arbitration award. Tatibouet argued that the arbitrators exceeded their powers because they misapplied Hawai'i law by: (1) not applying the ready, willing, and able requirement; (2) awarding Ellsworth remedies under the theory of unjust enrichment in the absence of authority to bestow such an award under the Settlement Agreement; and (3) ruling that Ellsworth had the exclusive option to purchase the Mark Twain as required by the Settlement Agreement. On April 8, 1999,

arguments on both motions were held. On April 28, 1999, the circuit court granted Ellsworth's motion to confirm the final award. On May 20, 1999, the circuit court issued an order denying Tatibouet's motion to vacate the arbitration award. The court ruled that:

> the arbitrators stayed within the proper boundaries of the parties' arbitration agreement. The arbitration agreement does not refer to any substantive Hawai'i law. It explicitly refers to AAA's Commercial Rules under which the panel proceeded.... Petitioner is, in effect, requesting that the court evaluate and weigh the merits of the case. Petitioner's insistence that the arbitrators must decide whether Ellsworth was ready, willing, and able (RWA) to exercise his purchase rights is an argument on the merits. Having found that the facts do not warrant a re-consideration of the RWA issue, the arbitrators were free to consider alternative equitable theories, including the theory of unjust enrichment, and [sic] theory which is recognized in Hawai'i. Moreover, it was within the discretion of the arbitrators to decide whether enough evidence had been submitted to them for consideration of the unjust enrichment theory.

On May 25, 1999, Tatibouet timely appealed.

## II. STANDARD OF REVIEW

### A. Statutory Construction

"The issue whether the circuit court erred in confirming the Final Award of the Arbitrator requires an interpretation of HRS §§ 658–8 (1993),[2] 658–9 (1993),[3] and 658–10

---

2. HRS § 658–8 provides:

> **Award; confirming award.** The award shall be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or the party's attorney. A copy of the award shall be served by the arbitrators on each of the other parties to the arbitration, personally or by registered or certified mail. At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or cor-

rected, as prescribed in sections 658–9 and 658–10. The record shall be filed with the motion as provided by section 658–13, and notice of the motion shall be served upon the adverse party, or the adverse party's attorney, as prescribed for service of notice of a motion in an action in the same court.

3. HRS § 658–9 provides:

> **Vacating Award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:
> (1) Where the award was procured by corruption, fraud, or undue means;
> (2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(1993)[4]. The interpretation of a statute is a question of law reviewable *de novo.*" *Wayland Lum Constr., Inc. v. Kaneshige,* 90 Hawai'i 417, 421, 978 P.2d 855, 859 (quoting *Shimabuku v. Montgomery Elevator Co.,* 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995)).

### B. *Arbitration*

▆▆ Our review of arbitration awards is guided by the following principles. It is well settled that "[b]ecause of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to 'the strictest possible limits[.]'" *Mathewson v. Aloha Airlines,* 82 Hawai'i 57, 69, 919 P.2d 969, 981 (1996) (quoting *Arbitration Bd. of Dir. of Ass'n of Apartment Owners of Tropicana Manor,* 73 Haw. 201, 205, 830 P.2d 503, 507 (1992) (hereafter "Jeffers") (brackets in original) (citations omitted)); *see also Excelsior Lodge Number One, Indep. Order of Odd Fellows v. Eyecor, Ltd.,* 74 Haw. 210, 224–27, 847 P.2d 652, 659–60 (1992). As such, a court has "no business weighing the merits of . . . the [arbitration] award." *Mathewson,* 82 Hawai'i at 69, 919 P.2d at 981 (quoting *Jeffers,* 73 Haw. at 205–06, 830 P.2d at 507) (citation omitted). Indeed, the legislature has mandated that a court may vacate an arbitration award "only on the four grounds specified in HRS § 658–9, and . . . [may] modify or correct an award only on the three grounds specified in HRS § 658–10." *Id.* at 69, 919 P.2d at 981 (quoting *Jeffers,* 73 Haw. at 206, 830 P.2d at 507) (citation and footnotes omitted). There-

fore, "HRS § 658–8 contemplates a judicial confirmation of the award issued by the arbitrator, 'unless the award is vacated, modified, or corrected' in accord with HRS §§ 658–9 and 658–10." *Id.* at 69, 919 P.2d at 981 (quoting *Jeffers,* 73 Haw. at 207, 830 P.2d at 507) (citation omitted).

Based upon the policy limiting judicial review of arbitration awards, this court has held that "parties who arbitrate a dispute assume 'all the hazards of the arbitration process including the risk that the arbitrators may. make mistakes in the application of law and in their findings of fact.'" *Id.* at 69, 919 P.2d at 981 (quoting *Jeffers,* 73 Haw. at 214–15, 830 P.2d at 511) (citations omitted). Where arbitration is made in good faith, parties are not permitted to prove that an arbitrators [sic] erred as to the law or the facts of the case. *See id.* at 70, 919 P.2d at 981 (citing *Jeffers,* 73 Haw. at 214–15, 830 P.2d at 511).

*Wayland Lum Constr., Inc.,* 90 Hawai'i at 421–22, 978 P.2d at 859–60 (alterations in original).

### C. *Circuit Court Ruling*

▆▆ "We review the [circuit] court's ruling on an arbitration award *de novo,* but we also are mindful that the [circuit] court's review of arbitral awards must be 'extremely narrow and exceedingly deferential.'" *Bull HN Info. Sys. v. Hutson,* 229 F.3d 321, 330 (1st Cir.2000) (quoting *Wheelabrator Envirotech Operating Servs. v. Massachusetts Laborers Dist. Council Local 1144,* 88 F.3d 40, 43 (1st Cir.1996)).

---

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

4. HRS § 658–10 provides:

**Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:
(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;
(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

## III. *DISCUSSION*

Tatibouet asks this court to vacate the arbitration award because the arbitrators exceeded the scope of their powers when they: (1) failed to adhere to Hawai'i law in ruling that (a) Ellsworth need not prove he was ready, willing, and able to purchase the Pickwick Hotel, and (b) Ellsworth was entitled to an exclusive option of purchasing the Mark Twain Hotel; (2) fashioned a remedy based on unjust enrichment; (3) awarded Ellsworth legally inconsistent remedies; and (4) decided to exclude evidence on the $2.85 million appreciation value of the Pickwick Hotel. We resolve these issues by first addressing the role of substantive law in arbitrations and then analyzing each of Tatibouet's points of error.

A. *The arbitrators did not exceed the scope of their authority because an incorrect interpretation of the selected substantive law is not one of the four grounds upon which judicial review is warranted.*

▪ Tatibouet asserts that the panel was bound by the choice-of-law provision to adhere to Hawai'i substantive law in rendering the appropriate remedy. We hold that even if the parties select a particular substantive law in a choice-of-law provision, reviewing courts may not vacate arbitration awards for the arbitrators' misinterpretation, but not obvious disregard,[5] of the selected law unless the parties expressly provide for expanded judicial review in the arbitration provision.

It is well settled that the legislature overwhelmingly favors arbitration as a means of dispute resolution. *Leeward Bus Co. v. Honolulu,* 58 Haw. 64, 71, 564 P.2d 445, 449 (1977) ("[T]he proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation.") (quoting *Gregg Kendall & Assocs. v. Kauhi,* 53 Haw. 88, 93, 488 P.2d 136, 140 (1971)). "The effectiveness of arbitration as a vehicle for the resolution of disputes depends in part upon the predictability of its efficiency." *Id.* One means of

ensuring the efficiency of arbitration is to strictly limit judicial review of arbitration awards to the provisions of HRS Ch. 658. *Bateman Constr. v. Haitsuka Bros.,* 77 Hawai'i 481, 484, 889 P.2d 58, 61 (1995) ("If there is an enforceable agreement to arbitrate, the court's power is limited by HRS Chapter 658. The court cannot act except as allowed by that Chapter.") (internal quotation marks and citations omitted). Consequently, the legislature has constrained judicial review and subsequent interference with arbitration awards by limiting the vacation of such awards to the grounds outlined in HRS § 658–9. HRS § 658–8 (presuming confirmation of arbitration award "unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10"); *see also Gepaya v. State Farm Mut. Auto. Ins. Co.,* 94 Hawai'i 362, 365, 14 P.3d 1043, 1046 (2000) (noting that judicial review is limited to the strictest possible limits "because 'of the legislative policy ... encourag[ing] arbitration and thereby discourag[ing] litigation' ") (quoting *Gadd v. Kelley,* 66 Haw. 431, 441, 667 P.2d 251, 258 (1983)) (citations omitted and alterations in original); *Wayland Lum Constr., Inc.,* 90 Hawai'i at 422, 978 P.2d at 860 ("[J]udicial review of arbitration decisions is strictly limited[.]"); *University of Hawai'i Prof'l Assembly ex rel. Daeufer v. University of Hawai'i,* 66 Haw. 214, 223, 659 P.2d 720, 727 (1983) ("[J]udicial review in arbitration cases is strictly limited[ ] since 'extensive judicial review of arbitration awards would frustrate the intent of the parties to avoid litigation and would also nullify the legislative objective in the enactment of the Arbitration and Awards statute [HRS Ch. 658].' ") (quoting *Mars Constr. v. Tropical Enters.,* 51 Haw. 332, 335, 460 P.2d 317, 319 (1969) (some alterations in original)); *Mars Constr.,* 51 Haw. at 335, 460 P.2d at 319 ("This court has decided to confine judicial review to the strictest possible limits.").

▪ Judicial review is limited to cases in which the arbitrators manifestly exceed the agreement between the parties. HRS

---

5. Because the evidence does not support the conclusion that the arbitrators plainly disregarded the selected law, we do not address this issue. However, we must make clear that the holding in

the case *sub judice* does not encompass cases that provide proof of intentional and wilful disregard of the parties' agreement.

§ 658–9 carves out four exceptions under which this court may vacate an arbitration decision, *see supra* note 4. The exception germane to this case is HRS § 658–9(4), which provides that an award may be vacated if "the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made." [6] (Emphasis added). A misinterpretation of law does not amount to exceeding enumerated powers, or imperfect execution of powers, to the extent that the arbitrators failed to issue a final award. Rather, this court has, thus far, reserved the phrase "exceeded their powers" as reference to arbitrators' improper consideration of matters outside the scope of the arbitration agreement:

> [P]recisely because "the scope of an arbitrator's authority is determined by agreement of the parties," it follows that "[a]n arbitrator must act within the scope of the authority conferred upon him by the parties and cannot exceed his power by deciding matters not submitted." *Clawson v. Habilitat, Inc.*, 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989) (citations omitted). Accordingly, ... where an arbitrator has exceeded his or her powers by deciding matters not submitted, this court has held, pursuant to HRS § 658–9(4), that the resulting arbitration award must be vacated. *Brennan v. Stewarts' Pharmacies, Ltd.*, 59 Haw. 207, 223, 579 P.2d 673, 681–82 (1978).

6. The arbitration clause specified that the arbitration proceeding was to be governed by the Commercial Rules of the American Arbitration Association [hereinafter "AAA Rules"]. The AAA Rules prescribe procedural rules but do not direct how substantive law affects arbitrations. The most guidance the AAA Rules provide on the role of substantive law in arbitrations is set forth in Rule 45, which authorizes arbitrators to award a remedy that the "arbitrator deems just and equitable and within the scope of the agreement of the parties, including but not limited to specific performance."

7. This court has not elaborated upon what it means when an arbitration award draws its essence from the agreement. However, the Ninth Circuit has interpreted the Supreme Court's standard to mean that a reviewing court must look to the arbitration clause, the words of the contract, and the conduct of the parties. *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830–31 (9th Cir.1995) (citing *Edward Hines Lum-*

*Mathewson*, 82 Hawai'i at 75, 919 P.2d at 987 (some alterations in original and bracket omitted). Thus, an arbitrator's award is valid when it "draws its essence" [7] from the arbitration agreement. *University of Hawai'i Prof'l Assembly*, 66 Haw. at 223, 659 P.2d at 727 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). The Court in *Enterprise Wheel & Car Corp.*, noted that a presumption of validity exists for an arbitration award when the arbitrators do not evidence a betrayal of the agreement between the contracting parties: "[An] award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. 1358.

This court has vacated cases where arbitrators have decided issues beyond those submitted by the parties. *University of Hawai'i v. University of Hawai'i Prof'l Assembly ex rel. Watanabe*, 66 Haw. 232, 659 P.2d 732 (1983) (vacating the arbitration award because the arbitrator "should only have considered the limited question of whether [UH] had applied its qualifications in an arbitrary and capricious way"); *Brennan*, 59 Haw. at 222–23, 579 P.2d at 681–82 (holding that arbitrators exceeded their powers when they decided issues not presented for resolution).[8]

*ber Co. v. Lumber & Sawmill Workers Local No. 2588*, 764 F.2d 631, 635 (9th Cir.1985), *cert. denied*, 475 U.S. 1131, 106 S.Ct. 1661, 90 L.Ed.2d 203 (1986)); *see also Local Joint Exec. Bd., Culinary Workers Union, Local 226 v. Riverboat Casino*, 817 F.2d 524, 527 (9th Cir.1987); *United Steelworkers*, 363 U.S. at 597, 80 S.Ct. 1358.

8. Tatibouet also cites *Brennan* in his reply brief as support for his proposition that the arbitration award conferred in favor of Ellsworth should be vacated. This court vacated the arbitration award in *Brennan*, pursuant to HRS § 658–9(4), because the arbitrators failed to decide the issue presented to them and instead construed lease provisions that were not subject to the arbitration. The misinterpretation of law alleged in the present case is vastly different. The arbitration clause and the issues presented in this case gave the panel broad authority. Unlike *Brennan*, Tatibouet is not averring that the panel exceeded its

This court has also vacated arbitration awards pursuant to HRS § 658–9(4) in cases where the arbitrators acted without the authority bestowed upon them by the parties' agreement. *University of Hawai'i v. University of Hawai'i Prof'l Assembly ex rel. Wiederholt,* 66 Haw. 228, 659 P.2d 729 (1983) (vacating award because the collective bargaining agreement did not allow the arbitrator to appoint an *ad hoc* panel); *Jeffers,* 73 Haw. 201, 830 P.2d 503 (vacating award because arbitrator reopened hearings and modified award after final disposition).

 While HRS § 658–9(4) is constructed in the disjunctive, *i.e.,* that vacation is proper where the arbitrators exceeded their powers *or* so imperfectly executed them, this court has not addressed what constitutes a violation under the latter prohibition. However, it is evident, from this court's decisions and those of other jurisdictions, that vacatur is not a proper remedy for arbitrators' imperfect understanding of law. It is well settled that arbitration awards may not be vacated, pursuant to HRS § 658–9(4), if the arbitrators commit a legal or factual error in reaching its final decision. *Mars Constr. Inc.,* 51 Haw. at 335, 460 P.2d at 319. This concept limiting judicial review peculiar to cases involving arbitration is derived from the precept that such an award, "if made in good faith, is conclusive upon the parties, and that [they] can[not] be permitted to prove that the arbitrators decided wrong either as to the law or the facts of the case." *Thomas v. Trustees of Lunalilo Estate,* 5 Haw. 39, 40 (1883). Undue judicial review, and subsequent interference, would not only stymie legislative intent but would also thwart the intent of the parties. *Morrison Knudsen Co. v. Makahuena Corp.,* 66 Haw. 663, 668, 675 P.2d 760, 765 (1983) (" '[A]n extensive . . . review of arbitration awards would frustrate the intent of the parties to avoid litigation and would also nullify the legislative objective in the enactment of the Arbitration and Awards statute.' ") (quoting *Mars Constr.,* 51 Haw. at 335, 460 P.2d at 319). Limited judicial review of arbitration awards pre-

serves the parties' contractual objectives. The agreement to submit disputes to arbitration is a voluntary one. *Mars Constr.,* 51 Haw. at 335, 460 P.2d at 319. Parties who willingly agree to submit such claims and distill their accord into a written agreement "thereby assume[ ] all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." *Gadd,* 66 Haw. at 443, 667 P.2d at 259 (quoting *Mars Constr.,* 51 Haw. at 336, 460 P.2d at 319–20). However, inasmuch as the agreement to arbitrate is contractual, "the parties may modify the agreement defining the scope of the arbitrator's powers and authority." *Wayland Lum Constr., Inc.,* 90 Hawai'i at 422, 978 P.2d at 860 (quoting *Clawson v. Habilitat,* 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989) (citations omitted)).

The conclusion that arbitrations may not be vacated for a misunderstanding of law or fact is also supported by analogous decisions from other jurisdictions. In *DiRussa v. Dean Witter Reynolds,* 121 F.3d 818 (2d Cir.1997), *cert. denied,* 522 U.S. 1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998), the Second Circuit held that arbitrators did not exceed their authority when they erroneously interpreted federal statutory law. DiRussa brought a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b) (1967) (recognized as unconstitutional by *Navarro v. UIC Med. Ctr.,* 165 F.Supp.2d 785, *reconsideration denied,* 165 F.Supp.2d 785 (N.D.Ill.2001)), and the New Jersey Law Against Discrimination (NJLAD) against Dean Witter Reynolds (Dean Witter) before the National Association of Securities Dealers (NASD), as required by his employment contract. *Id.* at 820. The arbitration panel found in favor of DiRussa and awarded compensatory damages. However, it refused any other relief, even though it acknowledged that DiRussa requested punitive damages and attorney's fees and costs. The ADEA provides, among other things, that "[t]he court *shall,* in addition to any judgment awarded to the plaintiff," also award attorneys fees and costs to be paid by the

authority but claims the panel failed to accurately interpret Hawai'i law when it resolved issues presented to it. As such, Tatibouet incorrectly

asks this court for *de novo* review of the panel's decision.

defendant. *Id.* at 822 (quoting 29 U.S.C. § 216(b) incorporated by reference in 29 U.S.C. § 626(b)). DiRussa argued, *inter alia*, that the panel's authority was defined by the ADEA and the NJLAD, and, therefore, that it exceeded its authority when it denied his request for fees and costs. The court noted that the issue to be decided was *not whether the dispute was correctly decided* but whether the arbitrators *had the authority to reach the disputable issue. Id.* at 824 (citing *New York Stock Exch. Arbitration between Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir.), *cert. denied*, 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991)). Thus, the court confirmed the award because it was compelled by both judicial precedent and policies preserving arbitration awards by limiting judicial review even though it was dissatisfied with its inability to correct an arbitration award that patently "evince[d] some ignorance of the governing legal principles." *Id.* at 825–26.

New York appellate courts also hold that arbitration awards may not be reviewed for error of law or fact. Vacation of arbitration awards is limited to one of the four grounds outlined in New York Civil Practice Law and Rule (CPLR) § 7511(b)(1) (McKinney 1988); the provision pertinent to this discussion provides that vacatur is permissible only when "an arbitrator . . . exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made." [9] New York courts have interpreted CPLR § 7511(b)(1)(iii) to forbid arbitrators from exceeding their powers by exercising authority beyond that granted to the arbiter by either statute or the arbitration agreement. *Brijmohan v. State Farm Ins. Co.*, 92 N.Y.2d 821, 677 N.Y.S.2d 55, 699 N.E.2d 414, 415 (1998) (holding that arbitrator exceeded powers by awarding damages

more than that of applicable insurance policy limits when the arbitration clause of the insurance contract incorporated by reference the American Arbitration Association rules, which provides that arbitrators "shall render a decision . . . not in excess of the applicable policy limits."); *Metropolitan Prop. & Liab. v. Mendelsohn*, 251 A.D.2d 666, 667, 676 N.Y.S.2d 606 (1998) (vacating award on the basis that neither statutes nor regulations permitted "a master arbitrator to vacate the award of an arbitrator in order to permit a party to present new evidence."); *Town of Newburgh v. Civil Serv. Employees Ass'n*, 204 A.D.2d 464, 611 N.Y.S.2d 899, 901 (App. Div.1994) (holding that arbitrator exceeded his authority when the awarded remedy was not within the scope of allowable corrections under the collective bargaining agreement, and noting that "an arbitrator clearly exceeds a specifically enumerated limitation on his or her power, the award may be vacated." (citation and internal quotation marks omitted)). The misinterpretation of fact or law, however, is not sufficient to vacate an award. *Revson v. Hack*, 239 A.D.2d 169, 657 N.Y.S.2d 51 (App.Div.1997). In *Revson*, the parties created a limited partnership agreement that contained an arbitration and a choice-of-law provisions. *Id.* at 51. While the choice-of-law clause designated New York law, which required the partners to bring an action through arbitration derivatively on behalf of the partnership, rather than individually, the arbitration clause was silent as to any applicable law. *Id.* The arbitrator did not apply New York law and Hack appealed. *Id.* The appellate court upheld the award holding that the correctness of an arbitrator's decision was "a question of law not reviewable by the courts[.]" *Id.* In sum, the New York courts have made clear that reviewing courts may not vacate arbitra-

---

**9.** CPLR § 7511(b)(1) provides:

1. The award shall be vacated on application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:
 (i) corruption, fraud or misconduct in procuring the award; or
 (ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

 (iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter was not made; or
 (iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

tion awards even if the arbitrator misconstrues the agreement or substantive law. *In re Silverman [Benmor Coats]*, 61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261, 1266 (1984); *see also Lentine v. Fundaro*, 278 N.E.2d 633, 635 (N.Y.1972) ("Absent provision to the contrary in the arbitration agreement, arbitrators are not bound by principles of substantive law or rules of evidence.") (Citations omitted.).

California public policy also favors the expeditious nature of arbitrations and, therefore, forbids undue judicial interference. *Marsch v. Williams*, 23 Cal.App.4th 238, 28 Cal.Rptr.2d 402 (1994). Consequently, judicial review of arbitration proceedings is limited to the enumerated grounds outlined in California Civil Procedure Code (CCPC) § 1286.2(a) (West 2001). CCPC § 1286.2(a)(1) provides in relevant part that awards may be vacated if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." [10] California courts have not interpreted CCPC § 1286.2(a)(1)(4) to require judicial

intervention in cases where arbitrators make a mistake of law or fact in binding arbitrations. *Bonshire v. Thompson*, 52 Cal. App.4th 803, 60 Cal.Rptr.2d 716, 719 (1997); *Luster v. Collins*, 15 Cal.App.4th 1338, 19 Cal.Rptr.2d 215, 219–20 (1993); *Lopes v. Millsap*, 6 Cal.App.4th 1679, 8 Cal.Rptr.2d 814, 817 (1992). The misinterpretation of substantive law qualifies as a mistake of law and, therefore, vacation is inappropriate when the arbitrators do not correctly apply the law selected by the parties in the underlying contract. *Marsch v. Williams*, 23 Cal. App.4th 238, 28 Cal.Rptr.2d 402, 406 (1994) (citing *Pacific Gas & Elec. Co. v. Superior Court*, 15 Cal.App.4th 576, 19 Cal.Rptr.2d 295 (1993)).[11] In *Marsch*, a case factually similar to the present case, the California appellate court explained that the proper focus for reviewing courts is not how the arbitrators applied the selected law but what the parties have agreed upon regarding mistakes committed by arbitrators: "Rather we are required to determine whether the parties have agreed that an arbitrator's mistake in

10. CCPC § 1286.2(a) provides:

> a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following:
> (1) The award was procured by corruption, fraud or other undue means.
> (2) There was corruption in any of the arbitrators.
> (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.
> (4) *The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision* upon the controversy submitted.
> (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.
> (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between

> employers and employees or between their respective representatives.
> (Emphasis added.).

11. Tatibouet contends that *Marsch* is not good law in California. He argues that *Marsch* relied upon another California Court of Appeals case, *Pacific Gas & Elec. Co. v. Superior Court*, 15 Cal.App.4th 576, 19 Cal.Rptr.2d 295 (1993) (hereinafter *"PG & E"*), which was overruled by *Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal.4th 362, 36 Cal.Rptr.2d 581, 885 P.2d 994, 1003 (1994). However, *PG & E* was distinguished by *Advanced Micro* on other grounds. *Marsch* cited *PG & E* for the proposition that an appellate court may not review an arbitration award for an error of law or fact. *Marsch*, 23 Cal.App.4th at 244–45, 28 Cal.Rptr.2d 402. *Advanced Micro* replaced *PG & E's* standard for determining whether an arbitrator exceeded his authority. *PG & E* allowed vacation of an arbitration award if it amounted to an "arbitrary remaking of the contract[.]" *Id.* at 1003–05. The new standard, under *Advanced Micro*, is that an award may not be vacated as long as it draws its essence from the contract. *Id.* at 1003–05. This new standard neither detracts from nor limits the application of *PG & E* to *Marsch*. In fact, the new standard enunciated by *Advanced Micro* is also used in this jurisdiction and does not affect the issues presented in this appeal. *University of Hawai'i Prof'l Assembly*, 66 Haw. at 223, 659 P.2d at 727 (quoting *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. 1358).

either determining the appropriate law or applying it are reviewable in a court of law." *Id.* at 406. Similar to New York, the California courts resolved that unless the parties expressly provide for expanded scope of judicial review, appeal to the courts will not rectify any error of law or fact committed by the arbitrators, even if the decision is made in contravention of general choice of law provisions. *Id.* at 245, 28 Cal.Rptr.2d 402.[12]

Other courts, in construing provisions similar to HRS § 658–9(4), have also concluded that the misinterpretation of law or fact of arbitration awards are beyond the scope of judicial review. *Raytheon Co. v. Rheem Mfg. Co.*, 322 F.2d 173, 182–83 (9th Cir.1963) ("This court has expressly held that an award under the federal act will not be set aside for mere error in the law or failure of the arbitrator to understand or apply the law"); *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174, 178 (1996) (holding that arbitration award cannot be vacated for mistake of law or fact, but only for undue means, which is corruption, fraud, or other wrongdoing); *Moncharsh v. Heily & Blase*, 3 Cal.4th 1, 10 Cal.Rptr.2d 183, 832 P.2d 899 (1992) (holding that sufficiency of evidence is beyond scope of judicial review); *Department of Ins. v. First Floridian Auto and Home Ins. Co.*, 803 So.2d 771, 774 (Fla.Dist.Ct.App.2002) ("[I]t is

well settled that the award of arbitrators in statutory arbitration proceedings cannot be set aside for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment.") (Internal quotation marks and citations omitted.); *Jackson Trak Group, Inc. v. Mid States Port Auth.*, 242 Kan. 683, 751 P.2d 122, 127 (1988) ("Nothing in the award relating to the merits of the controversy, even though incorrectly decided, is grounds for setting aside the award in the absence of fraud, misconduct, or other valid objections."); *Softkey Inc. v. Useful Software, Inc.*, 52 Mass.App.Ct. 837, 756 N.E.2d 631, 634 (2001) ("If the arbitrator[ ] in assessing damages commit[s] an error of law or fact, but do[es] not overstep the limits of the issues submitted to [him], a court may not substitute its judgment on the matter.") (Citation and internal quotation marks omitted.); *Commercial Union Ins. Co. v. Maine Employers' Mut. Ins. Co.*, 794 A.2d 77, 80 (Me.2002) ("When an arbitrator stays within the scope of its authority, the award will not be vacated even when there is an error of law or fact.") (Citations omitted.); *Matter of United Fed'n of Teachers, Local II*, 135

---

**12.** The United States Supreme Court invoked a different method of approaching the problem of reconciling substantive law and arbitration. Contrary to both California and New York, the United States Supreme Court interpreted a service contract and held that a substantive law selection by the parties contained in a provision of the underlying contract may not limit the authority of the arbitrators: "[T]he choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In reaching this decision, the Court analyzed each provision in isolation and utilized common law contract interpretation rules. It determined that the choice-of-law provision simply inserted substantive law into the contract. New York allowed its courts, although not its arbitrators, to award punitive damages; therefore, the selection of New York substantive law did not unequivocally exclude the award of punitive damages. *Id.* at 59–60, 115 S.Ct. 1212. The arbitration agreement provided that the National Association of Securities Dealers (NASD) rules would apply, which allowed an award of

punitive damages. *Id.* at 60–61, 115 S.Ct. 1212. Inasmuch as interpreting each clause separately did not resolve the issue, the court utilized common law rules by construing the contract against the drafter and reading the contract in a manner that would give consistency to all provisions of the agreement. *Id.* at 62–63, 115 S.Ct. 1212. Ultimately, the Court concluded that the arbitrators properly awarded punitive damages and held that the award was to be enforced. *Id.* at 64, 115 S.Ct. 1212. It should be noted that the Supreme Court's position on this issue has not been consistent. On similar facts, the Court held in *Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), that state procedural law, selected by the choice-of-law provision, and not the FAA, which applied because the contract involved interstate commerce, governed the arbitration. Regardless of the differences, *Mastrobuono* and *Volt* are distinguishable because these cases reconciled the differences between federal and state law. No such conflict presents itself in this case. More importantly, the issue presented in this case is not whether Hawai'i law should have been applied, but whether the arbitrators applied Hawai'i law correctly.

A.D.2d 638, 522 N.Y.S.2d 572, 573 (App.Div. 1987) (holding that "[a]lthough portions of the arbitrator's award herein may arguably indicate an imperfect understanding of the evidence or of the applicable provisions of the collective bargaining agreement (art 21[E][4] ), the purported errors amount to no more than errors of law or fact, and as such are insufficient to set aside an award") (citation omitted); *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 383 A.2d 189, 191–92 (1978) (affirming arbitration award despite the fact that the award was barred by trust agreement—variance from the contract did not constitute misconduct that would justify vacating the award).

█ Tatibouet's contention, which in sum proffers that the arbitrators erred in granting various remedies because it failed to conform to Hawai'i law, requires this court to interpret the contract and determine whether the parties intended to restrict the arbitrator's authority by requiring them to apply Hawai'i law in making their decision. This task is beyond the scope of judicial review. Just as the parties specifically provided that the arbitrators were entitled to award attorney's fees and costs to the prevailing party but could not award punitive damages, Ellsworth and Tatibouet could have also contracted for expanded judicial review of the arbitrators' decision, if so agreed by parties. This, however, they did not do. Rather, both Ellsworth and Tatibouet voluntarily agreed to settle their disputes by binding arbitration. Without express reference in the arbitration agreement that the parties intended the courts to review and thereby affect the finality of the arbitration decision, this court would be required to interpret the underlying Settlement Agreement and speculate as to the intent of the parties.

█ The contract in the present case unequivocally exhibits the voluntariness of the parties' agreement to arbitrate their disputes. Both Ellsworth and Tatibouet were of equal bargaining power; given the unique nature of the case, the contract was by no means a standard adhesion contract. Both parties agreed to be bound by the finality and binding effects of arbitration decisions; the arbitration clause provided, *inter alia*, that "the decision of any two of [the arbitrators] shall be final, conclusive and binding upon all parties, all as provided in Chapter 658, Hawai'i Revised Statutes[.]" Both parties agreed,[13] as indicated in the arbitration provision, that the prevailing party would be awarded attorneys' fees and costs but not punitive damages. Even if the choice-of-law provision restricted the arbitrators' authority, this court may not, consistent with case precedent, vacate the arbitration award because, at most, the award involved a mistaken application of the chosen law. We hold that, absent express reference for expanded judicial review in the arbitration provision, reviewing courts may not vacate or modify the arbitration award unless it otherwise violates HRS §§ 658-9 or –10; however, we must also make clear that judicial abstention does not extend to cases where the parties provide proof that the arbitrators intentionally and plainly disregarded a choice-of-law selection.

1. *Ready, willing, and able and fully integrated agreement*

█ Tatibouet asks this court to reverse the circuit court's order and vacate the arbitration award based on the panel's ruling that Ellsworth need not prove he was ready, willing, and able to purchase the Pickwick Hotel. He also argues that the Settlement Agreement was fully integrated, and, therefore, the panel was bound by the choice-of-law provision, which selected solely Hawai'i law. He contends that the arbitration panel exceeded its scope of authority when it failed to apply Hawai'i law, which resulted in a "pursu[it of] their own brand of industrial justice under the guise of 'equity.' " Because the choice-of-law provision required the panel to adhere to Hawai'i law, Tatibouet contends that the panel violated HRS § 658-9(4).

**13.** The arbitration provision specifically provided that:

> In all cases of arbitration, the arbitrator may award to the prevailing party or parties its or their reasonable attorneys fees [sic] and costs, witnesses' fees and costs, and all other expenses of such arbitration, if the arbitrator determines that it is appropriate to do so. Punitive damages shall not be assessable against any party.

Tatibouet's assertion that the panel's award must be vacated because it failed to apply the ready, willing, and able requirement, as mandated by Hawai'i law, is untenable. As discussed in section IV.A., *supra*, even if the panel's ruling was based on the misinterpretation of Hawai'i law, this court will not vacate the award on that basis. His assertion fails to allege one of the four grounds set forth in HRS § 658-9, and the record is devoid of evidence that the panel exceeded its statutorily prescribed powers. The circuit court was compelled to confirm the award because Tatibouet failed to allege that the panel violated one of the four bases to vacate an arbitration award. Accordingly, it did not err in this respect.

### 2. *Exclusive right to purchase*

■ Tatibouet argues that the panel failed to follow Hawai'i law when it ruled that Ellsworth was entitled to an exclusive option to purchase the Mark Twain Hotel. He further contends that, because the Settlement Agreement did not contemplate an exclusive real estate option, the panel exceeded its authority.

■ An arbitrator's interpretation of a contract cannot be vacated by the reviewing court. This court has noted that " '[t]he Arbitrator's decision and award shall be final and binding on all parties to this Agreement and shall not be subject to appeal,' and it was his [or her] judgment they had bargained for, not a court's." *Morrison–Knudsen Co. v. Makahuena Corp.*, 66 Haw. 663, 670–71, 675 P.2d 760, 766 (1983) (citing *Enterprise Wheel & Car Corp.*, 363 U.S. at 599, 80 S.Ct. 1358 ("It is the arbitrator's construction which was bargained for; and . . . the courts have no business overruling him because their interpretation of the contract is different from his.") (some alterations in original)). In this case, the panel interpreted paragraph 5.4.2, which provided that "closing shall take place no later than one hundred thirty five [sic] (135) days subsequent to Ellsworth's giving notice of the exercise of his option to purchase the hotel hereunder," to mean that

Ellsworth had an "exclusive right to purchase the Mark Twain Hotel . . . after notice was given of his intention to purchase the Mark Twain under the terms of the Settlement Agreement." Inasmuch as this is clearly the panel's interpretation of the Settlement Agreement, this court will not vacate the award.

Tatibouet's argument is premised upon the assertion that the panel exceeded its powers when it fashioned a remedy not contemplated directly by the Settlement Agreement. On the contrary, the sale of the Mark Twain was conducted pursuant to the terms of the Settlement Agreement, however delayed. Ultimately, the parties provided their own remedy when they proceeded with the transfer of the Mark Twain Hotel, as designated by the Settlement Agreement. Therefore, the panel remained within its scope of authority when it ruled that Ellsworth had an exclusive right to purchase the Mark Twain, and the circuit court did not err when it confirmed the award.

### B. *Award of damages under the theory of unjust enrichment*

■ Tatibouet contends that Ellsworth expressly waived and released his rights to the Hotels and to any equitable remedy in the Settlement Agreement. He cites several provisions, which he selectively edits, that he contends prohibit Ellsworth from claiming an ownership interest in either the Pickwick or the Mark Twain Hotels and obtaining equitable remedies. He posits that these provisions limited the panel's scope of authority to fashion a remedy based on unjust enrichment.

Tatibouet's self-serving interpretation of the Settlement Agreement would not only strip the arbitration panel of its ability to fashion an appropriate remedy, but would render the arbitration clause meaningless. Contrary to Tatibouet's attempt at skewing the purpose and effect of the cited provisions, which included sections 1.4, 4.7, 8.1, 8.2, 9.2, and 9.3,[14] Ellsworth's waiver and release of

---

14. The provisions pertinent to this issue were cited by Tatibouet as follows:

Section 1.4: In consideration of his right to receive the aforesaid deferred compensation and the benefits stated in Section 2, below,

the claims against Tatibouet do not apply to disputes arising out of the Settlement Agreement.

■ Tatibouet also argues that the arbitration panel exceeded its authority when it based its award on a theory of unjust enrichment because Ellsworth did not have an existing ownership interest. This contention, however, is beyond the review of this court. The panel's misinterpretation of law is not one of the grounds upon which this court may vacate an arbitration award; "whether or not the claim is permitted under the applicable law is irrelevant under" HRS § 658-9(4). *Eljer Mfg. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir.), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). As discussed in section IV.A., *supra*, this court lacks the authority to vacate the award because questions of law are not one of the four grounds specified HRS § 658-9. *Mars Constr.*, 51 Haw. at 336, 460 P.2d at 319; *see also Eljer Mfg.*, 14 F.3d at 1256 ("Mere error in the interpretation of the law (as opposed to failure to decide in accordance with relevant provisions of law) does not provide grounds for disturbing an arbitration award.") (Citation omitted.).

## C. *Legally Inconsistent Remedies*

■ Tatibouet contends that the circuit court erroneously confirmed the arbitration award because the panel exceeded its authority when it based Ellsworth's award on legally inconsistent theories—unjust enrichment, a remedy available only in the absence of a contract as to the Pickwick Hotel, and specific performance, which requires the existence of an enforceable contract—as to the Mark Twain Hotel. Because this issue involves the panel's alleged misinterpretation of law, this court is without the authority to review the merits of Tatibouet's argument, as discussed *supra*.

## D. *Decision to exclude evidence relevant to unjust enrichment*

Tatibouet argues the circuit court erred when it confirmed the arbitration award because the panel refused to hear evidence that was pertinent and material to the dispute. He contends that HRS § 658-9(3) authorizes this court to vacate the award because the arbitrators refused to hear evidence of how Ellsworth was unjustly enriched by the $2.85 million award. Tatibouet's argument is without merit. The panel properly considered the issues, and it correctly excluded irrele-

---

*Ellsworth specifically agrees to relinquish, waive and release any claims he may have against Tatibouet and Aston now or in the future arising out of any act or omission occurring prior to the execution of this Agreement* including but not limited to any claims arising out of Ellsworth's employment and termination of Employment with Aston or Tatibouet or both and any claim to the ownership of or the right to acquire any stock or other ownership or profit sharing interest in Aston and its affiliates, their predecessors or assigns.

(Emphases added.) However, Tatibouet failed to indicate that section 1.4 also provides that Ellsworth relinquished his rights to "any claims ... occurring prior to the execution of [the Settlement Agreement]." Because Tatibouet's breach occurred after the execution of the Settlement Agreement, section 1.4 is inapplicable.

Tatibouet cited section 4.7 as follows:

Section 4.7: "[E]llsworth hereby specifically releases and waives any and all claims to the Pickwick Hotel, any ownership interest in the hotel, any portion of Tatibouet's ownership in the hotel . . . .

However, the unedited portion provides:

4.7 *Option to Purchase: In consideration of the amount*, if any, payable under this Section 4, or an option to purchase the Pickwick

Hotel, Ellsworth hereby specifically releases and waives any and all claims to the Pickwick Hotel, any ownership interest in the hotel, any portion or Tatibouet's ownership in the hotel . . . .

(Emphasis added.)

Tatibouet cited section 9.2 as follows:

Section 9.2: This Agreement is an absolute bar to all *Released Claims* released hereunder. The parties shall no [sic], at any time ... institute any arbitration or make any claim or demand against each other concerning the Released Claims released hereunder.

However, the unedited portion of section 9.2 provides an exception to the absolute bar:

The parties further covenant and agree that they will individually and collectively refrain and abstain from, directly or indirectly, instigating, assisting, advising or being involved in any way with the assertion or bringing or (1) any Released Claim; (b) any claim similar to a Release Claim; (c) any claim related to or arising out of a Released Claim; or (d) any claim similar or related to or arising out of Ellsworth's employment by Aston and Tatibouet *except for claims for breach of this Agreement.*

(Emphasis added.)

vant evidence of operating and improvement expenses.

HRS § 658–9(3) authorizes this court to vacate an award if the "arbitrators were guilty of misconduct in ... refusing to hear evidence, pertinent and material to the controversy[.]" *See supra* note 4. This court has held that arbitration awards "must therefore be vacated where they fail to decide the question that has been submitted to them." *Mathewson,* 82 Hawai'i at 77, 919 P.2d at 989. In *Mathewson,* this court held that evidence is material and pertinent when it has a "tendency to make the existence of any fact that [was] of consequence to the determination of the action more probable or less probable than it would be without the evidence[.]" *Id.* at 78, 919 P.2d at 990 (quoting Hawai'i Rules of Evidence Rule 401) (some alterations in original and internal quotation marks omitted).

In the present case, Tatibouet's proffer of evidence of a $2.85 million windfall in favor of Ellsworth was based on two separate premises. First, Tatibouet wanted the panel to award him the difference between Ellsworth's purchase price of the Pickwick Hotel, $7.95 million, and the value of the hotel at the time of the closing on July 1, 1998, which was $10.8 million. Second, Tatibouet wanted to adduce evidence of the amount of the money he spent on improvements, taxes, mortgages, and insurance on the Mark Twain Hotel between October 1, 1995 and July 1, 1998. Therefore, the issue at hand is whether evidence of the Pickwick's appreciation in value and the operating and improvement and certain operating costs for the Mark Twain Hotel was pertinent and material to the controversy that was the subject of the arbitration.

█ The arbitration panel received evidence on the issue of the appreciation in value, and it properly determined that Ellsworth was not unjustly enriched by $2.85 million for the Pickwick Hotel. The panel noted that if Tatibouet had not breached the Settlement Agreement and had sold the Pickwick Hotel to Ellsworth in 1996, Ellsworth would have "been the beneficiary of the 1998 rise in San Francisco hotel values, so would have today been the owner of a Hotel with a value of approximately $10.8

million." Therefore, the panel properly rejected Tatibouet's contention that Ellsworth was unjustly enriched based on pertinent and material evidence presented to it.

█ The arbitration panel refused to receive evidence regarding the operating expenses for and cost of improvements on the Mark Twain Hotel because the Settlement Agreement did not provide for the compensation of such expenses. Unlike the Pickwick Hotel, which was sold to a third party prior to the delivery of the required appraisals in violation of the Settlement Agreement, the Mark Twain Hotel was sold to Ellsworth as contemplated by the Settlement Agreement. Therefore, the panel "did not order consummation of the transaction and did not control the terms under which the transaction occurred." It found that:

> The Settlement Agreement was effective as of June 1, 1993. Thus, the parties anticipated that Ellsworth might acquire the Mark Twain after it had been operated by Respondents for more than three years. Yet the Settlement Agreement made no provision for reimbursement for expenses incurred by Tatibouet during that interim period. On the other hand, Tatibouet was entitled to retain profits realized from the operation of the Hotel during the period prior to the sale.

(Footnote omitted.) Consequently, the panel did not find any basis for reimbursing Tatibouet for such expenses during the period in which he caused a delay. Because the parties participated in the sale of the Mark Twain Hotel pursuant to the terms of the Settlement Agreement and the operating expenses were not contemplated by the contract, evidence of the requested expenses was not relevant to the sale and transfer of the Mark Twain Hotel, which was effected by the parties and was not ordered by the panel. Therefore, evidence regarding the operating and improvement expenses was neither material nor pertinent to the controversy. Accordingly, the circuit court did not err.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's order confirming the final arbitration award.

**244**

Concurring Opinion of ACOBA, J., with whom RAMIL, J., Joins.

I agree that arbitrators may be held to have exceeded their powers if they go beyond the boundaries of the arbitration agreement—a matter we discern from the language of the arbitration agreement itself. *See Wayland Lum Constr., Inc. v. Kaneshige*, 90 Hawai‘i 417, 422, 978 P.2d 855, 860 (1999) ("The scope of an arbitrator's authority is determined by the agreement." (Citing *Clawson v. Habilitat, Inc.*, 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989); *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai‘i 57, 75, 919 P.2d 969, 987 (1996).)).

Since the "Governing Law" provision controlled the construction of the Agreement and the mandatory arbitration clause was part of that agreement, *see id.* ("[A]n arbitration agreement should be construed as a whole, and its meaning determined from the entire context." (Citations omitted.)), arguably the arbitrators were bound to construe the agreement in accordance with the governing law specified in the governing law provision, *see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (stating that a general choice of law provision in an agreement accompanied by a separate arbitration clause should be read to incorporate into the agreement the "substantive principles that [the state court] would apply, but not . . . special rules limiting the authority of arbitrators" when the arbitration came within the Federal Arbitration Act); *Osteen v. T.E. Cuttino Constr. Co.*, 315 S.C. 422, 434 S.E.2d 281, 284 (1993) (holding that the governing law provision of a contract, although separate from the arbitration agreement clause, "indicates the parties' agreement to have the validity and construction of the contract determined by arbitrators according to the substantive law").

However, assuming that that is the case, any error in the application of Hawai‘i law by the arbitrators would be beyond our purview. *See Mathewson*, 82 Hawai‘i at 70, 919 P.2d at 982 ("An arbitration 'award, if made in good faith, is conclusive upon the parties, and . . . neither of them can be permitted to prove that the arbitrators decided wrong either as to the law or the facts of the case.' " (Quoting *Board of Directors of Ass'n of Apartment Owners of Tropicana Manor v. Jeffers*, 73 Haw. 201, 214, 830 P.2d 503, 511 (1992) (citations omitted).)). It is not evident from the facts that the arbitrators expressly chose to disregard Hawai‘i law, so as to constitute "misbehavior[,]" Hawai‘i Revised Statutes (HRS) § 658–9(3) (1993), or to indicate that the arbitrators "so imperfectly executed [their powers], that a mutual, final, and definite award, upon the subject matter submitted, was not made[,]" HRS § 658–9(4).

For the foregoing reasons, I concur in the result.