214 P.3d 1100

**KONA VILLAGE REALTY, INC., et al., Plaintiffs–Appellees,**

**v.**

**SUNSTONE REALTY PARTNERS, XIV, LLC, et al., Defendants–Appellants.**

**No. 28840.**

Intermediate Court of Appeals of Hawai'i.

June 29, 2009.

WATANABE, Acting Chief Judge,
NAKAMURA and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Defendants–Appellants, Sunstone Realty Partners, XIV, LLC and Sunstone Realty Partners, IX, LLC (collectively, **Sunstone**) appeal from the Order Granting Plaintiff Kona Village Realty, Inc.'s Motion to Confirm Arbitration Award and Denying [Sunstone's] Motion to Vacate or Correct the Arbitration Award Filed October 8, 2007 (**Confirmation Order**) in the Circuit Court of the Third Circuit (**Circuit Court**).[1]

Although argued on alternative grounds, there is only one issue on appeal in this case—whether the Circuit Court erred in affirming an arbitration award (**Award**) which included an award of $123,994.69 in attorneys' fees, nearly double the amount of the principal and interest components of the Award in favor of Plaintiffs–Appellees Kona Village Realty, Inc., Brenda Tschida, and Robert Tschida (collectively, **Kona Village**) and against Sunstone. For the reasons set forth herein, we answer this question in the negative.

## I. BACKGROUND

On April 11, 2005, Kona Village filed a seven-count complaint against Sunstone, as well as additional defendants who were not parties to the arbitration and are not parties to this appeal. Kona Village alleged, *inter alia*, breach of contract and breach of the implied covenant of good faith and fair dealing by Sunstone and sought damages in an amount in excess of $260,000. On August 18, 2005, Sunstone filed a motion to compel arbitration. On October 14, 2005, the Circuit Court ordered Kona Village to arbitrate its two contract-based claims against Sunstone, as provided for in the applicable agreements between them, and denied the motion to compel arbitration with respect to the other claims and counterclaims at issue in the case.

The arbitration hearing (**Arbitration**) was held on January 16–19, 2007, before three arbitrators (**Arbitrators**), and was conducted

Michael L. Lam, Margaret E. Parks (Case Lombardi & Pettit), Honolulu, on the briefs, for Defendants–Appellants.

Francis L. Jung, Usha Kilpatrick Kotner (Jung & Vassar, P.C.), Kailua Kona, on the briefs, for Plaintiffs–Appellees.

1. The Honorable Glenn S. Hara presided.

in accordance with Hawaii Revised Statutes (HRS) Chapter 658A (Supp.2006) and the American Arbitration Association's Commercial Arbitration Rules.[2] *See* HRS § 658A–3(c). In the Award, which was initially dated April 16, 2007,[3] the Arbitrators awarded Kona Village principal and interest in the amount of $69,594.04, attorneys' fees in the amount of $123,994.69, and costs in the amount of $25,673.18, for a total amount of $219,261.91.

On July 12, 2007, Sunstone filed a motion to vacate or correct the Award alleging that: (1) the Arbitrators exceeded their authority under HRS § 658A–21(b); (2) the Award violated public policy; (3) the Award evinced a manifest disregard of the law; and/or (4) the Award contained a mathematical miscalculation as to attorneys' fees. On July 27, 2007, Kona Village filed a motion to confirm the Award.

On September 12, 2007, a hearing was held on both motions. The Circuit Court granted Kona Village's motion to confirm and denied Sunstone's motion to vacate or correct. An order granting Kona Village's motion for Hawaiʻi Rules of Civil Procedure (HRCP) Rule 54(b) certification was entered on December 20, 2007. The Judgment confirming the Award was entered on December 28, 2007. Sunstone timely filed a Notice of Appeal on January 18, 2008.

## II. POINTS OF ERROR ON APPEAL

Sunstone contends that the Circuit Court erred in:

1. not finding that the Arbitrators exceeded their authority in awarding all attorneys' fees;

2. finding that the Arbitrators' award of all attorneys' fees did not violate public policy; and

3. not finding that the Award evinced a manifest disregard of the law.

2. The Circuit Court's October 14, 2005 order mistakenly concluded, *inter alia:* "The arbitration agreements entered into herein were executed prior to July 1, 2002; Hawaii Revised Statute § 658 is therefore the applicable statute of reference herein." HRS § 658A–3(c) provides: "After June 30, 2004, this chapter governs an agreement to arbitrate whenever made." In addition,

## III. STANDARD OF REVIEW

 "We review the circuit court's ruling on an arbitration award *de novo*, but we also are mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." *Tatibouet v. Ellsworth*, 99 Hawaiʻi 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks, citations, and brackets omitted).

Judicial review of an arbitration award is limited by the following precepts:

First, because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.

Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits. An arbitration award may be vacated only on the four grounds specified in HRS § 658–9 and modified and corrected only on the three grounds specified in HRS § 658–10. Moreover, the courts have no business weighing the merits of the award.

Third, HRS §§ 658–9 and –10 also restrict the authority of appellate courts to review judgments entered by circuit courts confirming or vacating the arbitration awards.

*Schmidt v. Pac. Benefit Servs., Inc.*, 113 Hawaiʻi 161, 165–66, 150 P.3d 810, 814–15 (2006) (citations omitted).

the parties agree that Chapter 658A, rather than Chapter 658, applies to this matter. *See* HRS § 658A–3(b).

3. On May 16, 2007 and June 29, 2007, the award was clarified as to the apportionment between the Sunstone defendants.

Although formulated under the prior arbitration statute, this standard of review is equally applicable to arbitrations conducted under HRS Chapter 658A. Under HRS Chapter 658A, an arbitration award can be vacated only on the six grounds specified in HRS § 658A–23(a) and modified and corrected only on the three grounds specified in HRS § 658A–24. The supreme court has made it clear that the courts have no business weighing the merits of an arbitration award. *See also, e.g., United Public Workers, AFSCME, Local 646 v. Dawson Int'l, Inc.*, 113 Hawai'i 127, 137–38, 149 P.3d 495, 505–06 (2006).

## IV. DISCUSSION

Sunstone argues three grounds for vacating and remanding the Confirmation Order, only one of which is based on HRS § 658A–23(a), which provides:

§ 658A–23 **Vacating award.** (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was:

(A) Evident partiality by an arbitrator appointed as a neutral arbitrator;

(B) Corruption by an arbitrator; or

(C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A–15, so as to prejudice substantially the rights of a party to the arbitration proceeding;

(4) *An arbitrator exceeded the arbitrator's powers;*

(5) There was no agreement to arbitrate, unless the person participated

in the arbitration proceeding without raising the objection under section 658A–15(c) not later than the beginning of the arbitration hearing; or

(6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A–9 so as to prejudice substantially the rights of a party to the arbitration proceeding.

(Emphasis added.)

A. *The Arbitrators Did Not Exceed Their Powers*

 The scope of an arbitration panel's authority is determined by the relevant agreement to arbitrate. *Hamada v. Westcott*, 102 Hawai'i 210, 214, 74 P.3d 33, 37 (2003). In this case, the arbitration section of relevant agreements [4] between the parties provides as follows:

14. *Arbitration.* Any dispute arising under this Agreement or any agreement incidental or ancillary to this Agreement or any other aspect of the relationship between the parties hereto shall be submitted to arbitration pursuant to the rules of the American Arbitration Association (hereinafter referred to as the "AAA") then in effect. Any party that desires to submit any issue or dispute to arbitration shall promptly so notify the other party in writing. Claims or disputes involving $25,000 or less shall be heard by a single arbitrator. Claims involving more than $25,000 or non-monetary issues shall be heard by a panel of three (3) arbitrators, which panel shall include no more than one (1) attorney. The panel arbitrators shall be selected by the AAA upon receiving notice from either party that a dispute exists. The decision of a majority of such arbitrators shall be final, conclusive and binding on the parties hereto. **All proper costs and expenses of such arbitration including, without limitation, witness fees,** *attorneys' fees* **and the fees of the arbitrators** *shall be charged to the party or parties in such amounts as the majority*

---

4. There were two agreements between the parties, which are identical in all parts relevant to this appeal.

*of the arbitrators shall determine at the time of the award.* In the event of the failure, inability or refusal of any arbitrator to act, a new arbitrator shall be appointed in his stead by the AAA. An award so rendered shall be binding in all aspects and shall be subject to the provisions of Chapter 658, Hawaii Revised Statutes, as the same may be amended from time to time; provided, however, that no such award shall provide for an award of punitive damages.

(Emphasis added.)

 The Arbitrators were expressly authorized to determine the issue of attorneys' fees. Arguably, our analysis of this point of error should stop here. The Arbitrators exercised the power granted to them in the agreements to arbitrate. Therefore, the Circuit Court correctly confirmed the Award, even if the Arbitrators incorrectly construed the agreements or misinterpreted applicable law. *See Daiichi Hawai'i Real Estate Corp. v. Lichter*, 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2004) ("[W]here the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.") (citations, internal quotation marks, and brackets omitted; format altered). Nevertheless, we will further examine Sunstone's argument that the Arbitrators exceeded their powers.

Sunstone directs the court to the language in the above-quoted arbitration provision that subjects an award under the agreements to the provisions of HRS Chapter 658, "as the

5. Sunstone argues that, as the replacement for repealed Chapter 658, Chapter 658A effectively is an amendment to the prior arbitration statute. HRS § 658A–21(b) provides:

> (b) An arbitrator may award reasonable attorney's fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding.

6. HRS § 607–14 provides in relevant part:

> **§ 607–14 Attorneys' fees in actions in the nature of assumpsit, etc.** *In all the courts*, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract

same may be amended from time to time," and the separate attorneys' fees section of the agreements, which provides:

15.9 *Attorneys' Fees.* Should either party hereto reasonably retain counsel for the purpose of enforcing or preventing the breach of any provision hereof, including, but not limited to, instituting any action or proceedings to enforce any provision hereof, for damages by reason of any alleged breach of any provision of this Agreement, for a declaration of such party's rights or obligations hereunder or for any other judicial remedy, then *the prevailing party shall be entitled to* be reimbursed by the other party for all costs and expenses incurred in connection therewith, including, but not limited to, *reasonable attorneys' fees* for the services rendered to such prevailing party.

(Emphasis added.)

In a nutshell, Sunstone argues that the agreements and HRS § 658A–21(b) [5] limit the attorneys' fees award to "reasonable" attorneys' fees and that reasonable attorneys' fees in an arbitration pursuant to HRS Chapter 658A cannot exceed the "twenty-five percent of the judgment" ceiling in HRS § 607–14 for attorneys' fees in actions in the nature of assumpsit.[6] Thus, Sunstone argues, the Arbitrators' award of attorneys' fees well in excess of 25% of the principal and interest amount of the Award is inherently unreasonable and, accordingly, the Arbitrators exceeded their powers.

Sunstone's argument is fatally flawed for at least two reasons. First, as the supreme court held in *Hamada:*

> in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that *this amount shall not exceed twenty-five percent of the judgment.* (Emphasis added.)

[HRS § 607–14] states that attorneys' fees may be awarded *"in all the courts,* in all actions in the nature of assumpsit." The plain wording of HRS § 607–14 states that it is applicable "in all the courts." Clearly the statute applies only to court actions and not arbitration proceedings. The application of HRS § 607–14 to an arbitration agreement would run counter to the "general understanding" well established in this country that generally attorneys' fees and costs are not awarded unless provided for and in arbitration proceedings the arbitration agreement generally governs. Accordingly, HRS § 607–14 does not affect disputes submitted in arbitration. As alluded to previously, this approach best comports with affording through arbitration an expeditious, relatively uncomplicated, and less expensive forum for dispute resolution.

*Hamada,* 102 Hawai'i at 218, 74 P.3d at 41 (citations, footnote, and brackets omitted). Thus, HRS § 607–14 is not, by its own terms, applicable to arbitration proceedings.

In a footnote tied to this passage, the supreme court noted that "the effect or construction of [HRS § 658A–21(b) ] is yet to be determined." *Hamada,* 102 Hawai'i at 218 n. 14, 74 P.3d at 41 n. 14. Unlike its predecessor, HRS § 658A–21(b) allows an *alternative* authority for an award of attorneys' fees in an arbitration ("an arbitrator may award reasonable attorney's fees … *if such an award is authorized by law in a civil action …* **or** by the agreement of the parties"), which might be read to allow attorneys' fees in arbitrations in the nature of assumpsit pursuant to HRS § 607–14. However, we will not read the first clause of HRS § 658A–21(b), coupled with HRS § 607–14, to *dis-*

*place* the parties' freedom to otherwise bargain for arbitration attorneys' fees awards. Such a reading would render the "or by the agreement of the parties" language superfluous. *See, e.g., Office of Hawaiian Affairs v. Hous. and Cmty. Dev. Corp. of Haw.,* 117 Hawai'i 174, 191, 177 P.3d 884, 901 (2008) (rev'd on other grounds, *Hawaii v. Office of Hawaiian Affairs,* —— U.S. ——, 129 S.Ct. 1436, 173 L.Ed.2d 333 (2009)) ("[I]t is a cardinal rule of statutory construction that courts are bound, if rational and practical, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute."). Moreover, as provided in HRS § 658A–4, the parties to an arbitration agreement may waive or vary the effect of HRS § 658A–21(b). Here, we have an attorneys' fees provision, so we need not decide whether and to what extent, in the absence of an attorneys' fees provision, attorneys' fees would be allowed pursuant to the first clause of HRS § 658A–21(b).

██ The second and more fundamental flaw in Sunstone's argument is that, even if we were to conclude that the Arbitrators mistakenly failed to adhere to the cap for attorneys' fees awards in court actions, this legal error would not be a sufficient ground for overturning the Award. *See, e.g., Tatibouet v. Ellsworth,* 99 Hawai'i 226, 236, 54 P.3d 397, 407 (2002) ("vacatur is not a proper remedy for arbitrators' imperfect understanding of law"). Similarly, even if we were inclined to view the attorneys' fees award as "unreasonable," [7] the determination of the reasonableness of the attorneys' fees was *clearly* within the scope of the Arbitrators'

---

**7.** We do not reach Kona Village's argument that Sunstone is judicially estopped from asserting that Kona Village's attorneys' fees were unreasonable because Sunstone requested attorneys' fees in the amount of $134,591.90, even *more* than the amount requested by and awarded to Kona Village. However, this fact is some indication of at least the proportionality of Kona Village's request. We would be remiss not to note that, in arbitration proceedings, parties have great flexibility to agree to limit discovery and streamline the proceedings, in order to achieve the cost-savings goals associated with arbitra-

tion. *See, e.g.,* HRS §§ 658A–15 & 658A–17. On the other hand, parties also have the flexibility to wage an expensive arbitration battle, notwithstanding arbitration's worthy aspiration to be a less-expensive forum. When parties avail themselves of this latter route and expressly grant arbitrators broad authority to award attorneys' fees "in such amounts as the majority of the arbitrators shall determine," second-guessing of reasonableness determinations by reviewing courts would simply proliferate the battlegrounds and further undermine the purpose of alternative dispute resolution.

authority and cannot be vacated or modified by a reviewing court. *Id.* at 234–40, 54 P.3d at 405–11 (although awards may be vacated where arbitrators have decided issues beyond those submitted by the parties, an award may not be reviewed for errors of fact or law absent proof that the arbitrators intentionally and plainly disregarded the parties' agreement or clearly-established law). A court simply cannot vacate an arbitration panel's award based on the argument that the award is unreasonable.

### B. The Attorneys' Fees Award Did Not Violate Public Policy

■ Citing *Inlandboatmen's Union of the Pacific, Haw. Region v. Sause Bros., Inc.,* 77 Hawai'i 187, 191, 881 P.2d 1255, 1259 (App.1994), Sunstone argues that the Arbitrators' award of attorneys' fees is a blatant violation of established public policy allowing awards of reasonable attorneys' fees up to a maximum of 25% and no more. In *Inlandboatmen's Union,* this court adopted the following standard for determining whether an arbitration award is subject to being vacated for violation of public policy, based on a United States Supreme Court decision:

In *Misco,* the U.S. Supreme Court considered the question of when courts may set aside arbitration awards as contravening public policy. In doing so, it did not sanction a broad judicial power to set aside arbitration awards as against public policy. Under *Misco,* the test established for application of the public policy exception requires a court to determine that (1) the award would violate some explicit public policy that is well-defined and dominant,

and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown. Hence, a refusal to enforce an arbitration award must rest on more than speculation or assumption.

77 Hawai'i at 193–94, 881 P.2d at 1261–62 (citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 35, 43, 44, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)) (internal citations, quotation marks, ellipses, and brackets omitted).

As discussed above, the supreme court previously held that HRS § 607–14 generally does not apply to arbitration proceedings, HRS § 658A–21(b) does not include a specific cap on reasonable attorneys' fees, and HRS § 658A–4 allows parties to waive or vary the effects of HRS § 658A–21(b). No statute precludes attorneys' fees greater than 25% of an arbitration award. While maintaining arbitrations as a cost-effective alternative to litigation is clearly consistent with well-established public policy, it is not the role of this court to establish a new rule of law mandating a cap on attorneys' fees awarded in arbitrations. This is a matter for legislative action or the parties' own agreements.[8] Sunstone has not established that the Arbitrators clearly violated some explicit, well-defined and dominant public policy.[9]

### C. The Arbitration Award Did Not Evince a Manifest Disregard of the Law

Citing *Tatibouet,*[10] Sunstone asks this court to adopt "manifest disregard of law" as

8. Indeed, a cap on *recoverable* attorneys' fees cuts both ways. If, as in this arbitration, both parties to the arbitration actually incur attorneys' fees well in excess of 25% of the arbitration award, is it better policy to effectively wipe out the prevailing party's award by failing to recognize the fees-and-costs realities faced in matters involving complicated issues and/or contentious, well-funded opponents? The specter of potentially having to bear actual attorneys' fees, assuming they are reasonably incurred, might provide an incentive for parties to agree to streamlined procedures, limited discovery, and other means to realize the potential benefits of litigation avoidance. On the hand, it might cause contracting parties to abandon arbitration as an alternative to litigation.

9. We note that this case involves parties of relatively equal bargaining power who voluntarily agreed to arbitrate disputes relating to their business transactions and to be bound by the finality and binding effects of arbitration decisions. The parties have not argued and we have not considered whether established public policy might dictate a different result in another context.

10. Sunstone references the following passage and footnote:

We hold that even if the parties select a particular substantive law in a choice-of-law provision, reviewing courts may not vacate arbitration awards for the arbitrators' misinterpretation, but not obvious disregard, [FN5]

another ground for vacating an arbitration award and to vacate the Confirmation Order on that basis. For the same reasons we rejected Sunstone's public policy argument, we cannot conclude that the Arbitrators manifestly disregarded Hawai'i law. Therefore, we need not consider this issue further.

## V. CONCLUSION

For these reasons, we affirm the Circuit Court's October 8, 2007 Confirmation Order.

of the selected law unless the parties expressly provide for expanded judicial review in the arbitration provision.

 [FN5.] Because the evidence does not support the conclusion that the arbitrators plainly disregarded the selected law, we do not address this issue. However, we must make clear that the holding in the case sub judice does not encompass cases that pro-

vide proof of intentional and wilful disregard of the parties' agreement.

 *Tatibouet,* 99 Hawai'i at 234, 54 P.3d at 405.