**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000040
22-MAY-2025
08:10 AM
Dkt. 106 SO**

NOS. CAAP-22-0000040 AND CAAP-22-0000263


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ASSOCIATION OF APARTMENT OWNERS OF ALII COVE,
Plaintiff-Appellee, v. SUNSTONE REALTY PARTNERS X LLC,
Defendant-Appellee, and DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE GOVERNMENTAL AGENCIES 1-10;
and DOE ASSOCIATIONS 1-10, Defendants.

SUNSTONE REALTY PARTNERS X LLC,
a Hawaii Limited Liability Company,
Third-Party Plaintiff-Appellee, v. BODELL CONSTRUCTION COMPANY,
Third-Party Defendant-Appellant, and
BECERRA CONCRETE CONSTRUCTION; PACIFIC ATELIER
INTERNATIONAL, LLC, fka PACIFIC ATELIER INTERNATIONAL, INC.,
Third-Party Defendants-Appellees, and
DOE THIRD PARTY DEFENDANTS 1-100, Third-Party Defendants.

PACIFIC ATELIER INTERNATIONAL, LLC,
fka PACIFIC ATELIER INTERNATIONAL, INC.,
Additional Third-Party Plaintiff-Appellee, v.
ALLISON IDE STRUCTURAL ENGINEERS, LLC;
ENGINEERING DYNAMICS CORP., LANCE UCHIDA
MECHANICAL ENGINEERS, LTD., ALBERT CHONG ASSOCIATES, INC.,
Additional Third-Party Defendants-Appellees.

BODELL CONSTRUCTION COMPANY,
Fourth-Party Plaintiff-Appellant, v.
SIMPSON STRONG-TIE COMPANY, INC.;
HONOLULU WOOD TREATING CO., LTD.; KC METAL PRODUCTS, INC.;
TAMLYN; HAWAII PLANING MILL, LTD., dba HPM BUILDING SUPPLY;

RAY NORTON, dba C CONNARY CONSTRUCTION;
STEWART BUILDERS, LLC; DAVID LAYNE dba TITAN FRAMING;
TRUE STYLE PACIFIC BUILDERS, LLC; E.M. RIVERA & SONS, INC.;
RON & RAY, INC., dba RR ROOFING; SUMMIT PAINTING, INC.;
SUNSET PLUMBING INC.; BIG ISLAND AIR CONDITIONING INCORPORATED,
dba CUSTOM AIRE, INC.; P.A. HARRIS ELECTRIC, LLC;
ACME PREHUNG DOORS, LTD., Fourth-Party Defendants-Appellees,
and DOE ENTITIES 1-30, Fourth-Party Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC151001616)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, McCullen and Guidry, JJ.)

Third-Party Defendant/Fourth-Party Plaintiff-Appellant

**Bodell** Construction Company appeals from the Circuit Court of

the First Circuit's (1) January 10, 2022 "Order Granting

Defendant/Third-Party Plaintiff[-Appellee] **SunStone** Realty

Partners X LLC's Motion to Confirm Arbitration Decision and

Award" (**Order Confirming Arbitration Award**), (2) January 28,

2022 Judgment,[1] and (3) February 9, 2023 "Order Granting

[SunStone]'s Motion for Attorney's Fees, Costs and Other

Reasonably Incurred Expenses" (**Fees and Costs Order**).[2]

The background of this case spans over 20 years.

Briefly, in 2003, SunStone began developing a 200-unit

condominium complex in Kona known as Alii Cove. In November

---

[1] The Honorable James C. McWhinnie presided.

[2] The Honorable Kevin T. Morikone presided.

2003, SunStone and Bodell entered into a construction contract for Alii Cove.

Almost twelve years later, the Association of Apartment Owners of Alii Cove (**Association**) sued SunStone for damages stemming from construction defects. Sunstone asserted a third-party complaint against Bodell and others. The matter was removed to arbitration and the court proceedings were stayed. Although SunStone made several attempts to have Bodell participate in the arbitration, Bodell opposed.

In April 2020, SunStone and Association settled all claims related to Alii Cove for $15 million. Insurance paid $14,301,916.30 and Towne Development of Alii Cove (a member of SunStone) paid $698,083.70.

Turning to the arbitration between Sunstone and Bodell, SunStone sought contribution and indemnification for the $15 million paid to Association. After nineteen days of hearings, SunStone was awarded $8,351,848 in damages and $1,252,777 in attorneys' fees related to the arbitration (**Arbitration Decision and Award**).

The circuit court confirmed the Arbitration Decision and Award. The circuit court also granted SunStone's request for attorneys' fees and costs related to confirmation of the award.

In separate appeals, Bodell challenges the confirmation of the award (**CAAP-22-040**) and the award of attorneys' fees and costs related to confirmation of the award (**CAAP-22-263**).  SunStone contests this court's jurisdiction over both appeals.

We consolidated the appeals, and upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below, and affirm the Order Confirming Arbitration Award and affirm in part and vacate in part the Fees and Costs Order.

**(1)  Jurisdiction.**  We first address SunStone's contention this court lacks jurisdiction over the two appeals.

**(a)  CAAP-22-040**

In its statement contesting jurisdiction, SunStone contends Bodell lacks standing to appeal because it "waived any further challenges to the Arbitration Award."  SunStone specifically maintains Bodell waived its right to move to vacate the Arbitration Decision and Award as it asked the Arbitrator to clarify her unambiguous award, and later filed an opposition to SunStone's motion to confirm rather than a motion to modify, correct, or vacate the Arbitration Decision and Award.

As an initial matter, standing is prudential rather than jurisdictional.  See generally Tax Found. of Hawaiʻi v.

4

State, 144 Hawaiʻi 175, 188, 439 P.3d 127, 140 (2019). Next, though Bodell asked the Arbitrator to clarify her award by deleting a typographical error and providing an item-by-item breakdown of the award, the clarification Bodell sought from the Arbitrator did not substantively change the amount awarded. Cf. generally Mathewson v. Aloha Airlines, Inc., 82 Hawaiʻi 57, 82, 919 P.2d 969, 994 (1996) (indicating where the losing party sought a substantive change of the arbitration award as opposed to "mere clarification," the losing party was "precluded from challenging the trial court's confirmation order") (emphases omitted). And, contrary to SunStone's claim, the record indicates Bodell filed a motion to vacate the Arbitration Decision and Award on September 16, 2021.

But, more to the point, we have jurisdiction over this appeal because the circuit court entered a judgment pursuant to Hawaiʻi Revised Statutes (**HRS**) § 658A-25 (2016). See HRS § 658A-28(a)(6) (2016) (indicating "[a]n appeal may be taken from . . . [a] final judgment entered pursuant to this chapter").

**(b) CAAP-22-263**

In its statement contesting jurisdiction, SunStone contends the minute order Bodell appeals from is not an appealable order.

5

"[A] minute order is not an appealable order." Abrams v. Cades, Schutte, Fleming & Wright, 88 Hawaiʻi 319, 321 n.3, 966 P.2d 631, 633 n.3 (1998).  Nonetheless, a prematurely filed notice of appeal is considered timely after a judgment or order becomes final.  Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(a)(2).  After Sunstone filed its statement of jurisdiction, the circuit court entered its Fees and Costs Order.  Thus, we construe Bodell's appeal as being from the Fees and Costs Order; we have jurisdiction over this appeal.  See Abrams, 88 Hawaiʻi at 321 n.3, 966 P.2d at 633 n.3.

### (2)  Appeal from Order Confirming Arbitration Award (CAAP-22-040)

In challenging the confirmation of the arbitration award, Bodell contends the circuit court erred because (a) the award was "facially inconsistent," (b) the Arbitrator failed to clarify the award, and (c) evident partiality existed.

**(a)** First, Bodell contends the circuit court erred in confirming the arbitration award because the award was facially inconsistent.

Bodell argues the award was facially inconsistent because it awarded SunStone over $8 million even though the Arbitrator found SunStone sustained $698,083.70 in damages. According to Bodell, SunStone was "not entitled to recover from Bodell the amount that Steadfast Insurance Company paid to

settle" Association's claims. (Emphasis omitted.) Bodell further argues this "conclusion is mandated by the clear and unambiguous waiver of subrogation clause in the [American Institute of Architects] contract between SunStone and Bodell." Bodell relies on HRS § 658A-23(a)(4) (2016) to support its arguments.

HRS § 658A-23(a)(4) provides that an arbitration award shall be vacated if the arbitrator exceeded their powers. "We review the circuit court's ruling on an arbitration award *de novo*, but we also are mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Kona Vill. Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, 121 Hawaiʻi 110, 112, 214 P.3d 1100, 1102 (App. 2009) (citation omitted).

Here, the Arbitrator determined the subrogation waiver did not apply to the arbitration award and "[a]n arbitrator's interpretation of a contract cannot be vacated by the reviewing court." Tatibouet v. Ellsworth, 99 Hawaiʻi 226, 241, 54 P.3d 397, 412 (2002).

Thus, HRS § 658A-23(a)(4) was not implicated.

Bodell also argues the award was facially inconsistent because it awarded attorneys' fees without considering the reasonableness of those fees. According to Bodell, the Arbitrator "did not even *consider* the issue of reasonableness."

7

Bodell relies on HRS § 658A-21(b) (2016) and <u>Kona Village Realty</u>.

HRS § 658A-21(b) allows an arbitrator to award reasonable attorney's fees:

> (b) An arbitrator may award reasonable attorney's fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding.

In <u>Kona Village Realty</u>, this court determined because the parties' agreement included an attorneys' fees provision specifying reasonable attorneys' fees could be awarded, it could not vacate or modify the fees awarded and did not reach the issue of reasonableness of the fees. 121 Hawaiʻi at 114-16, 214 P.3d at 1104-06. However, the court opined that in cases where the parties "wage an expensive arbitration battle" by not limiting discovery and where the parties "expressly grant arbitrators broad authority to award attorneys' fees 'in such amounts as the majority of the arbitrators shall determine,' second-guessing of reasonableness determinations by reviewing courts would simply proliferate the battlegrounds and further undermine the purpose of alternative dispute resolution." <u>Id.</u> at 115 n.7, 214 P.3d at 1105 n.7.

Here, though the Arbitrator did not include findings related to reasonable rates or the amount of fees which would be

8

reasonable, she noted "[t]estimony was extensive and examination of expert witnesses was vigorous" and that the "parties presented a substantial body of evidence and exhibits" over the roughly nineteen-day proceeding. And, Bodell does not show the Arbitrator "intentionally and plainly disregarded the parties' agreement or clearly-established law." 121 Hawaiʻi at 116, 214 P.3d at 1106.

Thus, we decline to second guess the circuit court's confirmation of the Arbitration Decision and Award.

**(b)** Bodell next contends the circuit court erred in confirming the arbitration award because the Arbitrator's failure "to entertain Bodell's request to clarify" the award amounted to prejudicial misconduct preventing Bodell from seeking reimbursement from other parties. Bodell relies on HRS § 658A-23(a)(2)(C).

HRS § 658A-23(a)(2)(C) requires the circuit court to vacate an award if there was "[m]isconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding." Arbitrator misconduct may occur where the arbitrator "had any financial interest in the outcome of the decision; . . . identified with the interests, prejudices, and needs of either party; and . . . refused to hear testimony or refused to allow the presentation of evidence." But see Gadd v. Kelley, 66 Haw. 431, 441-42, 667 P.2d 251, 258-59 (1983)

9

(discussing trial court's findings regarding arbitration panel's conduct and behavior during arbitration proceeding).

In the order granting in part and denying in part Bodell's motion for clarification of the arbitration decision and award, the Arbitrator declined to give an item-by-item breakdown of the award because the purpose of the arbitration was to determine Bodell's responsibility to SunStone:

> With respect to Bodell's request that the Decision be clarified to reflect an item by item breakdown of the total $8,351,848 awarded, the undersigned Arbitrator declines to do so.
>
> This arbitration hearing was to determine the reasonableness of SunStone's undertaking to settle underlying claims made by the Association . . . and the extent to which Bodell was responsible.

(Emphases omitted.)

Bodell does not show how declining to give an item-by-item breakdown rises to the level of misconduct and only summarily maintains it is prejudiced as to pursuing indemnification and contribution claims against third parties.

Without a showing of misconduct, we cannot say the circuit court erred in confirming the arbitration award.

**(c)** Bodell also contends the circuit court "erred in confirming the arbitration award despite the Arbitrator's 'evident partiality.'" (Formatting altered.) Relying on HRS § 658A-12(d) to show evident partiality, Bodell points to the Arbitrator's use of the words "nonsense" and "poor witness,"

frustration with Bodell's counsel, and phone call with her doctor.

Under HRS § 658A-12(d) (Supp. 2018), the court may vacate an arbitration award if the arbitrator failed to disclose certain facts:

> (d) If the court, upon timely objection by a party, determines that the arbitrator did not disclose a fact required by subsection (a) or (b) to be disclosed, the court may determine that such failure to disclose constituted evident partiality and vacate an award made by the arbitrator pursuant to section 658A-23(a)(2).

Sections (a) and (b) of HRS § 658A-12 identify the following as facts to disclose: "direct and material financial or personal interest in the outcome of the arbitration proceeding" and "existing or past substantial relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness, or another arbitrator." "'The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award.'" Nordic PCL Constr., Inc. v. LPIHGC, LLC, 136 Hawaiʻi 29, 51, 358 P.3d 1, 23 (2015) (internal brackets and citations omitted).

In a request for supplemental disclosure, Bodell maintained "[o]n December 7, 2020, during a break, the Arbitrator told an individual with whom she had been talking off-camera that she needed to get back to this 'nonsense[.]'" In response, the Arbitrator stated she was "confident it was

11

addressing the amount of time being taken to examine on cross-examination of an issue, rather than the substance of the questioning." The Arbitrator's use of the word "nonsense" was not reflected in transcripts.

As to Bodell's argument that the Arbitrator made remarks indicating she pitied SunStone's expert, the arbitration transcript excerpts included in the record do not appear to reflect such remarks. Bodell maintained that on January 11, 2021 before Bodell resumed its cross-examination of SunStone's expert Colin Murphy (**Murphy**), "the Arbitrator related to the person off-camera that the 'poor witness' has been going on all day and going into tomorrow." In her supplemental disclosure, the Arbitrator noted she "did express concern for the several days of examination that [SunStone's] expert [Murphy] had been subject to, not as a point of partiality, but to comment on the length of time he was being questioned."

Without more, Bodell does not show that the Arbitrator's remarks of "nonsense" and "poor witness" were facts "that a reasonable person would consider likely to affect the impartiality of the arbitrator."

Examining Bodell's claim that the Arbitrator expressed irritation with Bodell's counsel and SunStone's expert, Murphy, Bodell maintains the Arbitrator's "admitted frustration . . . was unwarranted" because Bodell was not objecting to Murphy

12

being provided assistance in locating documents but rather to documents being pulled "which were not known to be marked as arbitration exhibits and obtaining factual information from non-witnesses during his arbitration testimony." (Emphases omitted.) During Murphy's testimony on January 12, 2021, Murphy acknowledged he was receiving assistance in locating documents and later when asked a specific question he noted an assistant was pulling documents so Murphy could see them.  Bodell noted this "would be highly unusual in a binding arbitration in person" and the following exchange occurred:

> THE ARBITRATOR:  If you wish a break every time you ask a question we will take a break and I will instruct him not to have assistance.  I can do that.
>
> All the assistant is helping is to locate the response.  So I'm not seeing where the problem is.  If you think it's a problem, I will accommodate you and we will stop each time and we'll have Mr. Murphy look it up himself.  Is that what you want?
>
> MS. ARATANI:  Well, will Bodell similarly be able to have assistance with their witnesses as they testify?
>
> THE WITNESS:  If I had a full set of drawings in front of me and if I had all the project documents in boxes that are brought into an arbitration, I would have them and I would be able to find them.
>
> But I'm looking them up in computers and trying to find all of them.  Before in earlier parts of the testimony it's been challenging and it's taken time.  So I asked Anne-Marie to help me so I would have the documents. That's all I'm doing.
>
> THE ARBITRATOR:  We're not going to have her help you.  We're going to stop.  And each time there is an objection you will look it up yourself however long it takes.  We will be in recess and I'll give you ten minutes to look for the response.  Thank you.

THE VIDEOGRAPHER: We are going off the record at 2:25 p.m.

(Whereupon, a recess was taken from 2:25 p.m. to 2:35 p.m.)

The following day, Bodell again objected to Murphy talking to his assistant off-the-record during his testimony:

MS. ARATANI: Your Honor, again for the record, I'd like to have the witness state for the record who he was just talking to.

THE WITNESS: I'm asking Ann Marie Zanelli to please call the office and get the listing that I have of the days that we were on site.

THE ARBITRATOR: If we were doing a live case the same opportunity would be permitted to people. Notes are passed between lawyers. Notes are passed to their paralegals. It's noted on the record that there was a verbal request. Otherwise we'll be in recess so we can do this live to accommodate objections. Proceed.

MS. ARATANI: Your Honor, I disagree as to experts. There are notes passed between paralegals and associates and counsel for parties but not by experts normally.

THE ARBITRATOR: We'll go off the record for Mr. Murphy to do this. And then when you are ready, Mr. Murphy, we'll reconvene, okay? So I'll turn everything off until we get word from Eamon that you're ready to respond to the question. Go off the record. Do your business and come back on the record. Thank you.

Though these exchanges suggest the Arbitrator may have been frustrated, they are not facts "that a reasonable person would consider likely to affect the impartiality of the arbitrator." See HRS § 658A-12(b).

Bodell also maintains the Arbitrator was "the very antithesis of a neutral factfinder" when she took a phone call from her doctor about a COVID-19 vaccination during direct examination of Bodell's president, without pausing the

proceedings, apologizing, or later asking the witness to repeat his testimony. However, the portion of the January 13, 2021 transcript reflecting the purported phone call was not included as part of the record. Thus, we cannot say Bodell established a reasonable impression of partiality.

With no "facts" establishing partiality or bias on the part of the Arbitrator, the circuit court did not err in confirming the award.

**(3) Appeal from Fees and Costs Order (CAAP-22-263)**

In challenging the award of attorneys' fees and costs related to confirming the arbitration award, Bodell contends (a) the circuit court considered inadmissible hearsay, and SunStone failed to show (b) its rates reflected the prevailing community rates, (c) the hours claimed were reasonable, and (d) the requested costs were reasonable.

**(a)** Pointing to the "billing records" and declaration of counsel appended to SunStone's fees and costs motion, Bodell contends the circuit court abused its discretion "in considering inadmissible hearsay evidence in granting Sun[S]tone's request for attorneys' fees." (Formatting altered.)

"If a motion requires the consideration of facts not appearing of record, it shall be supported by affidavit." Rules of the Circuit Courts of the State of Hawaiʻi (**RCCH**) Rule 7(a). "In lieu of an affidavit, an unsworn declaration may be made by

15

a person, in writing, subscribed as true under penalty of law, and dated[.]"  RCCH Rule 7(g); see generally Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 306, 141 P.3d 459, 479 (2006) (explaining an attorney's declaration authenticated the fees and costs incurred).  We also note that Hawai'i courts regularly examine billing records and declarations of counsel appended to requests for fees and costs to determine the amount of fees and costs to award.  See generally Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 122, 176 P.3d 91, 121 (2008) (explaining there is no "bright line standard for adequacy of documentation in the trial court's determination of attorneys' fees[,]" instead the award of attorneys' fees is reviewed for an abuse of discretion).

Here, SunStone's Exhibit 1 to its motion for fees and costs was an itemized, detailed billing spreadsheet indicating the amount of time attorneys and/or paralegals spent on various tasks.  Also appended to the fees and costs motion was the declaration of SunStone's attorney Cid H. Inouye (**Inouye**), who testified that the spreadsheet included as Exhibit 1 was "true and correct copies [sic] of itemized time and costs entries billed" while representing SunStone for matters related to confirmation of the arbitration award.  Inouye's declaration

16

provided a sufficient foundation to authenticate Exhibit 1.  See
Stanford Carr, 111 Hawaiʻi at 306, 141 P.3d at 479.

Thus, the circuit court did not abuse its discretion in considering Exhibit 1 and Inouye's declaration.

**(b)**  Bodell next contends the circuit court abused its discretion in awarding attorneys' fees as SunStone failed to show its rates reflected prevailing community rates.

HRS § 658A-25[3] "allows a court to award attorney's fees incurred in judicial proceedings to confirm an arbitration award when a motion to confirm award under HRS § 658A-22 is contested."  RT Import, Inc. v. Torres, 139 Hawaiʻi 445, 451, 393 P.3d 997, 1003 (2017).  "Parties seeking attorneys' fees bear the burden of demonstrating that the fees requested are

---

[3]  HRS § 658A-25 provides:

>   (a)  Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith.  The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.

>   (b)  A court may allow reasonable costs of the motion and subsequent judicial proceedings.

>   (c)  On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

(Formatting altered.)

17

reasonable." Gurrobat v. HTH Corp., 135 Hawai'i 128, 135, 346 P.3d 197, 204 (2015).

In its reply in support of its fees and costs motion, SunStone noted the hourly rates the United States District Court for the District of Hawai'i determined were reasonable for attorneys with over twenty years of experience ($280), eleven years of experience ($200), and seven to eight years of experience ($185), in a 2017 order awarding fees and costs as sanctions. See Starr Adjustment Servs., Inc. v. Rucker, Misc. No. 17-00133 DKW-KSC, 2017 WL 4106075, at *3 (D. Haw. Sept. 15, 2017) (Order).

The hourly rates requested here were less than the hourly rates in Starr Adjustment. Inouye, requesting $250.00 per hour, testified he and the other partner in the case each had more than 35 years of legal experience. Although Inouye did not provide the years of experience for the associates involved in the case, they requested a rate of $165.00 per hour, which was discounted from their usual billing rates of $310.00 and $270.00 per hour.

Because the court "ha[s] personal knowledge of the complexity of the litigation and the nature and quality of the legal services rendered before it[,]" we conclude that under these circumstances the circuit court did not abuse its discretion in awarding reasonable attorneys' fees that reflect

18

prevailing community rates.  See Stanford Carr Dev., 111 Hawaiʻi at 306, 141 P.3d at 480.

(c)  Bodell also contends the circuit court abused its discretion in granting SunStone's request for attorney's fees because the hours claimed were unreasonable, duplicative, or beyond the scope of HRS § 658A-25.  Bodell argues the following were unreasonable or duplicative entries:  multiple entries billed on August 10, 2021 for multiple individuals to review Bodell's "one-page opposition to the motion to confirm"; entries by multiple attorneys to review the Arbitration Decision and Award; billing entries for scheduling; e-mails to clients regarding billing for arbitration; and "time billed regarding Bodell's 'appeal chances[.]'"

As mentioned above, HRS § 658A-25 allows for reasonable attorneys' fees.  See HRS § 658A-25(c).  On appeal, Bodell bears the burden of showing the circuit court abused its discretion.  See generally DFS Grp. L.P. v. Paiea Props., 110 Hawaiʻi 217, 222, 131 P.3d 500, 505 (2006) (party requesting fees bears the burden of proving fees necessarily incurred); Kamaka, 117 Hawaiʻi at 122, 176 P.3d at 121 (trial court's award of attorneys' fees reviewed for abuse of discretion).

As to the multiple entries related to review of Bodell's opposition to the motion to confirm and review of the Arbitration Decision and Award, our case law does not

19

categorically prohibit "billing for reasonable time spent by multiple attorneys from the same firm" and Bodell does not provide evidence indicating the amount of time spent reviewing these documents was excessive. See Oahu Publ'ns, Inc. v. Abercrombie, 130 Hawaiʻi 352, 310 P.3d 1053, No. CAAP-13-0000127, 2013 WL 5676194, at *3 (App. Oct. 18, 2013) (SDO); In re Thomas H. Gentry Revocable Tr., Nos. 29727, 29728, 2013 WL 376083, at *16 (Haw. App. Jan. 31, 2013) (mem. op.).

The billing entry or entries related to scheduling that Bodell takes issue with are reviewing e-mails from the client's general counsel related to the motion to confirm, and attorneys' fees generally include fees related to client communication. See generally HRAP Form 8a. As to the "time billed regarding Bodell's 'appeal chances[,]'" these entries relate to client communication, stem from the motion to confirm, and were incurred before the Order Confirming Arbitration Award was entered.

Turning to the entries related to e-mails to clients regarding billing for arbitration, Bodell points to page 9 of Exhibit 1. One entry (reference number 21471) on page 9 for $9.50 appears to relate to billing stemming from the arbitration itself and, thus, was beyond the scope of HRS § 658A-25.

To the extent the circuit court granted attorneys' fees incurred in conjunction with the arbitration itself, which

20

are thus outside the scope of HRS § 658A-25, it abused its discretion.

**(d)**  Finally, Bodell contends the circuit court abused its discretion in granting SunStone's costs as SunStone failed to demonstrate the requested photocopying or duplication costs were reasonable and related to the motion to confirm or the motion to vacate the arbitration award.

If a party opposes the reasonableness of certain costs requested, those costs are not presumed reasonable.  But see Blair v. Ing, 96 Hawaiʻi 327, 335, 31 P.3d 184, 192 (2001) (indicating costs not objected to are allowed).  Additionally, when requesting photocopying costs, a party should indicate the costs of duplication, if photocopying occurred in-house, and provide information regarding each copy.  See Kikuchi v. Brown, 110 Hawaiʻi 204, 211, 130 P.3d 1069, 1076 (App. 2006).

Here, SunStone's reply in support of its fees and costs motion and documentation appended to its fees and costs motion suggest in-house photocopies were made, indicate the cost per page (2¢ for non-color copies, 10¢ for color), and only included photocopying costs from the date the Arbitrator issued the award.  As such, SunStone demonstrated the requested photocopying costs were reasonable.

Thus, the circuit court did not abuse its discretion in awarding costs.

Based on the foregoing, we affirm the circuit court's January 10, 2022 Order Confirming Arbitration Award and January 28, 2022 Judgment.  We affirm in part and vacate in part the circuit court's February 9, 2023 Fees and Costs Order, and remand for proceedings consistent with this summary disposition order.

DATED:  Honolulu, Hawaiʻi, May 22, 2025.

On the briefs:

Edward R. Hugo,
for Third-Party Defendant/
Fourth-Party Plaintiff-
Appellant.

Cid H. Inouye,
Kelvin H. Kaneshiro,
Michael G. Kozak,
Rachel A. Zelman,
Katherine B. Hughes,
(O'Connor Playdon Guben &
Inouye),
for Defendant/Third-Party
Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge